SOUTHERN TRAVELERS' ASS'N v. LEVY.
(No. 3605.)

Court of Civil Appeals of Texas. Texarkana. Dec. 5, 1928.

Rehearing Denied Jan. 31, 1929.

cation for membership and the certificate of membership, and the plaintiff did not plead the substancé or tenor of any of these, except the certificate of membership. It is believed that a cause of action was shown in the petition. If the whole of the contract was not in point of fact set forth in the petition, the failure to do so may have been reached by objection to the evidence when offered.

█ The several propositions of appellant present the points in view, in effect, that the appellee was not entitled to any benefits on account of the accident because the appellee's application misstated his real occupation and duties, inducing acceptance and classification of a risk not authorized by the laws of the association, and because the injury to appellee happened while he was engaged in a business or occupation different from that stated in his application for insurance and different from that for which he was insured against risk. The association, it appears, divided its risks into classes, and charged premiums or assessments in accordance with the classification. Certain risks were excluded from acceptance by the association; for instance, a foreman "whose work" is "manual labor" in the actual construction and repair of buildings. The association used a classification manual, made a part of the benefit certificate, providing classes, namely:

| Industrial | Commercial |
|---|---|
| AA-A | 1. Select. |
| B | 2. Preferred. |
| C | 3. Ordinary. |
| D | 4. Medium. |
| E | 5. Special. |

A "general contractor" is under class D in case "he does any manual work," and under class B in case he does "office work." "A superintendent and supervisor only" is under class C. A "contractor not otherwise classed" is in class E in case "he goes on the work." The appellee's certificates were classed in class E, which class covered "accidents of all kinds." The by-laws of the association, as pertinent, provide:

"Article XL. Misrepresentations. Section 1.—Any untrue statement in a member's application for membership shall render his certificate of membership void, and he shall be entitled to no benefits under the same."

Appellee's application for membership, with his answer, as pertinent, shows:

"4. Name and location of firm represented by you. Security Mortgage Company.

"Town. Texarkana.

"State. Arkansas.

"6. What is your occupation? Superintendent of Construction.

"8. Have you any other duties? No.

"26. I agree that this application, the laws of Texas, the charter and by-laws now in existence and as may be amended, and the certificate shall be the contract for membership

Rodgers & Rodgers, of Texarkana, for appellant.

Keeney & Dalby, of Texarkana, for appellee.

LEVY, J. The suit was by appellee upon two benefit certificates which obligated the appellant to pay $50 a week during the time of total disablement to work, and $25 a week during the time of partial disablement, in case such disability was due to bodily injury resulting from accidental means. In a trial without a jury the court awarded judgment in favor of the plaintiff for $263.43, with interest.

While the certificates were in force, and on August 2, 1927, at 3:45 o'clock p. m., the insured received bodily injury by accidental means, which totally disabled him from work for five weeks, and which partially disabled him for a further period, uncertainly shown, of "two or three weeks." Heavy pieces of timber suddenly fell to the ground, striking the appellee, who was standing nearby, and severely fracturing the right ankle and foot. There was no controverted issue as to his injury or the cause thereof. Errors are predicated upon other and different grounds.

█ The appellant insists that the demurrer to the petition should have been sustained because the contract upon which the suit was based consisted of the articles of incorporation, the by-laws of the association, the appli-

in this association, and that same is not to be binding on the association until the application is accepted and the certificate of membership issued.

"27. I warrant the above statements to be full and complete and true."

The Security Mortgage Company in the line of its business built houses for sale on installments, and repaired houses taken over by default of payment of mortgage debts. The appellee was the superintendent of construction and repair of houses, as occasion required, for the Security Mortgage Company. He also, when not engaged in work for the company, contracted such character of work for other people. The appellee had a crew of men under him doing the actual work of building and the manual labor required. He merely supervised and directed the men under him and in his employ as to the work. He testified:

"I just showed them (the men) how, and I did not do any of the carpenter work myself. * * * I did not do any of the manual labor myself. * * * My work required me to be at the construction during the time it was going on. I kept right with them (the men). * * * I have set doors and windows once in a while when in a tight, but that is all I would do on any job."

The evidence is further without conflict that from 1911 to the date of trial the appellee's regular "occupation" or means of earning a livelihood was that of superintendence of the construction of buildings. As testified to by the appellee, and not controverted:

"My employment since 1911 is being a foreman, contracting running jobs for people and looking after work; I was a foreman or supervisor of construction of buildings. * * * I just showed them how, and I did not do any of the carpenter work myself."

In the light of this undisputed evidence all the statements in the appellee's application were shown to be literally true. He did not, according to the evidence, misstate his occupation or duties thereunder in the application. Appellee was in fact, as stated in the application, principally representing or serving the "Security Mortgage Company" at Texarkana, Ark., in the line of his regular "occupation" or means of livelihood, which was that of "superintendent of construction." He performed "no other duties" besides his regular occupation for the mortgage company. In the following respect only does the appellant claim that untrue statements were made as to occupation and duties by appellee. The secretary testified:

"When we saw on his application that he was superintendent of construction for the Security Mortgage Company we thought that the superintendent for that concern would sit at his desk and figure specifications, because they are investment bankers. We did not have a class for that kind, only as bankers.

We have no class whatever for construction foremen. We looked up the Security Mortgage Company in Dunn and Bradstreet, and saw what class of work they were engaged in, and from that we came to the conclusion that he (appellee) was doing such work as we could take. We would not have accepted his application if we had known he was out on the actual construction and repairing of buildings, directing as foreman. A carpenter and a foreman doing carpenter work is a more hazardous occupation than we could take. A foreman that does no manual labor would come in class 'D.' A foreman doing inside work and no manual labor comes in class 'B.' "

It may not be regarded as a necessary implication that a person whose principal duty is that of superintendence of construction of buildings is merely to figure specifications. The classification as made was merely mistakenly so done by appellant itself; there appears no injury, as "a superintendent and supervisor only," not doing any manual labor, is of a class higher than E. The statements of appellee being true as to his occupation and principal duties, he was not responsible for the classification so made, and he cannot be precluded by any fault of his from urging the validity of the classification as well as the certificates issued. It is believed, in all the circumstances, that the classification or the certificates may not be avoided upon the ground of untrue representations, misstatements, or misleading statements on appellee's part.

■ Was appellee's injury incident to the "occupation" in which he was insured? Article 2, section 6, of the by-laws of the association, provides:

"When any member of this association shall engage in a business or occupation different from that which is stated in his application for insurance or is shown by the records of the association, he shall immediately notify the secretary in writing of such change in occupation, describing in full his duties and work in such changed occupation. Failure on the part of the member to comply with this provision shall cause his membership in this association to cease, and lapse all benefits in his certificate of insurance. Should a member engage in an occupation more hazardous than the occupation stated in his application he shall at once forfeit all rights and benefits provided for in his certificate of insurance."

The classification of hazards made in the by-law is predicated upon "occupations." The prohibition is directed against engaging in an "occupation different from" or "more hazardous than" the "occupation stated in the application for insurance." The appellee was not insured merely as an employee of the Security Mortgage Company while engaged solely in its work. He was insured against risks arising in his "occupation" or business,

of the character represented in his application. The evidence goes to show that at the time of the injury the appellee was engaged in his regular occupation of superintendence, although for parties other than the Security Mortgage Company, and that the character of work he was doing was not more hazardous than usually incident to his occupation as stated in the application. In such facts grounds do not exist for avoidance of the certificates. 4 Joyce, Ins., §§ 2236, 2236A. Appellee testified, and his evidence was not controverted, that "on August 2, 1927, I was supervising the building of Dixon-Horney that had burned. I was supervising the reconstruction of the filling station that had burned. I had a bunch of ten or twelve men working under me. My duties were to see that they tore up the concrete floor and cleaned the ground of rubbish. I was not doing any manual labor. All I was employed to do was boss. * * * At 1:30 in the afternoon I supervised the moving of a gas tank at the Kansas City Southern Railway tracks. I did not do any of the work. I simply directed the work to be done by the ten men doing the work and placing the timbers. The men, as directed, were to raise the tank up an inch at the time and place it in the arch under the saddle. They had to take a 6x8 and put it on the cross-ties to lift the tank. They lifted the tank once, maybe twice, and took out the blocks from under it to get it ready to raise again. Harris, who was on top, holloed that he was ready to have it lifted, and I said, 'Everybody out of the way.' At the time I was standing four or five feet away. The tank turned, and threw the 6x8 over on me. I was struck by the timbers on my right ankle and foot. * * * Mr. Harris was a construction man setting up pumps and tanks. At his request I went there. I just showed them how to put it up—like a superintendent or foreman. The prize pole slipped and the tank turned. The prize pole slipping was what hurt me. I was not engaged in operating the prize pole for purpose of putting up the tank."

If the facts resolved themselves into an issue, as appears, of whether or not the act done was more hazardous or constituted a distinct and different occupation, the trial court's finding would be conclusive.

■ The appellant contends that the appellee was not entitled to any benefits on account of the accident, because he failed and refused to pay the premium call due September 1, 1927, under the by-laws. The by-laws provide:

"Article V, Section 1.—Upon the failure of any member to pay premiums or any calls on or before thirty days from date of mailing notice of said call, except as outlined in Article IV, Section 4, said member shall become and is suspended as of 12:—o'clock noon, central standard time, on said 30th day, and the association shall not be liable to him or his beneficiary for any amount on account of sickness originating previous to or occurring during such suspension, nor for fifteen days thereafter. This association shall not be liable to him or his beneficiary in any amount on account of accident originating previous to or occurring during such suspension," etc.

The certificates were dated October 9, 1925. Premiums were payable quarterly in advance. Appellee paid all fees and premiums up to September 1, 1927. He did not pay and refused to pay call or premium for the quarter commencing September 1, 1927. The accident occurred August 2, 1927. The by-laws operated prospectively as to forfeiture. By the terms of the by-laws the appellee was not in the status of a suspended member through default of payment until "said thirtieth day" from the day the premium call was due and payable. At least in this case until that period of time was reached the appellee was entitled to accrued indemnity. The assessment at "the call" was due and payable by him on September 1, 1927. The compensation awarded by the judgment did not exceed a period of time of six weeks from August 2, 1927, which was the amount accrued before the date of the call, and before the suspension became effective. It is believed the fact of default in paying the call for advance or future premium falling due after the accident would not relieve the association from liability in any sum whatever accrued before suspension, since its liability for the same became fixed at the time of the accident, when the insured was in good standing. Burkheiser v. Mutual Accident Association (C. C. A.) 61 F. 816, 26 L. R. A. 112. The terms of the law, in effect terms of contract, may operate differently and in bar of indemnity arising after the date of the call of September, although suspension was not effective for thirty days after such date.

We have considered the other assignments, and overrule each of them; there being no reversible error.