**GRAND LODGE FREE AND ACCEPTED MASONS OF TEXAS v. WALKER.**

No. 12268.

Court of Civil Appeals of Texas. Dallas.

Nov. 6, 1937.

946

Hamp P. Abney and Lewis E. Bartlett, both of Sherman, for appellant.

W. J. Durham, of Sherman, for appellee.

LOONEY, Justice.

Grand Lodge Free and Accepted Masons of Texas, a corporation, appellant herein, is a fraternal benefit society, organized under and governed by the provisions of chapter 8, title 78, of the Statutes (article 4820 et seq., as amended [Vernon's Ann. Civ.St. art. 4820 et seq.]); maintains a grand and subordinate lodges, one of which is at Denison, Tex., known as Solomon Lodge No. 94. Richard Walker, at the time of his death (January 19, 1932), was a member of said lodge and had been for 35 years prior thereto. After his death, and in due time, Lizzie Walker, surviving wife of Richard, appellee herein, demanded of appellant payment of the share of the relief money collected from all members of subordinate lodges of the society during the Masonic year in which Richard died, to which she was entitled as beneficiary, and instituted this suit when payment was refused.

This is a second appeal by appellant from an adverse judgment; on the first appeal, the case was transferred to the Court of Civil Appeals at Eastland, and by that court was reversed and remanded, because appellee's petition failed to properly allege a cause of action, in that the contractual obligations sought to be enforced were not sufficiently set out in the pleading. See report of case 86 S.W. 2d 839.

On return of the record, appellee filed her second amended original petition, on which the case was tried, resulting in judgment in her favor for the amount of relief prayed for, with 12 per cent. damages and reasonable attorney's fees, from which this appeal was taken.

■ In its first assignment, appellant contends that the court erred in not sustaining its general demurrer. The transcript fails to show any action by the court on the demurrer, but, as the petition must be found sufficient to sustain the judgment, we have treated the assignment as a suggestion of fundamental error.

■ Having alleged the provisions of appellant's constitution relied upon for recovery, the petition, in our opinion, was good against the general demurrer. Southern Travelers' Ass'n v. Levy (Tex.Civ. App.) 13 S.W.2d 460, 461, presented a similar question with regard to which the Texarkana court, through Judge Levy, said: "The appellant insists that the demurrer to the petition should have been sustained because the contract upon which the suit was based consisted of the articles of incorporation, the by-laws of the association, the application for membership and the certificate of membership, and the plaintiff did not plead the substance or tenor of any of these, except the certificate of membership. It is believed that a cause of action was shown in the petition. If the whole of the contract was not in point of fact set forth in the petition, the failure to do so may have been reached by objection to the evidence when offered." The record here discloses that the constitution and by-laws of the society, in their entirety, were introduced in evidence without objection, and it was not denied that appellant was organized under the provisions of the statute relating to fraternal benefit associations. We therefore overrule this assignment.

■ In its second assignment, appellant complains of the action of the court in not sustaining the plea of 2-year limitation. This assignment is predicated upon the idea that the cause of action, alleged in the second amended original petition upon which the case was tried, set up a new and different cause of action, more than 2 years after its accrual. This assignment is overruled. We think the

cause of action alleged throughout was the same, although at first the petition was defective—in that the provisions of the constitution of the association relied upon for recovery were not sufficiently alleged. In Leifeste v. Stokes (Tex.Civ.App.) 45 S.W.2d 1006, 1007, Chief Justice McClendon said: "The filing of the suit tolls the statute of limitations as to every cause of action asserted in the original petition. And this is true, no matter how imperfectly the cause of action is alleged, and even when the allegations are so defective that the petition is bad upon general demurrer. Scoby v. Sweatt, 28 Tex. 713; Killebrew v. Stockdale, 51 Tex. 529; Southern Surety Co. v. Sealy Ind. S. Dist. (Tex.Civ.App.) 10 S.W.2d 786 (error refused)." To the same effect see Mann v. Mitchell (Tex.Civ.App.) 241 S.W. 715, 717, and Koenig v. Marti (Tex.Civ.App.) 103 S.W.2d 1023.

Appellant's third and fourth assignments, in effect, present the same question—that is, the third complains of the refusal of the court to direct a verdict in its favor, and the fourth complains of the action of the court in overruling objections to the charge, both assignments being based upon the contention that appellee failed to prove a case, in that the evidence showed that, at the time of his death, Richard Walker stood suspended for failure to pay relief dues, and had been dropped from appellant's membership roll prior to his death.

These assignments require a short review of the material facts. That Richard Walker was in good standing on December 10, 1932, and for 35 years prior thereto had consistently maintained membership in said society, we think is abundantly and satisfactorily shown by evidence. So, the inquiry narrows to whether or not he paid, or became delinquent and was suspended for failure to pay, the second annual installment of $7 Grand Lodge relief dues for the Masonic year beginning May 15, 1932, and ending May 14, 1933. His death occurring January 19, 1933, appellee notified the officers of the subordinate lodge, of which deceased was a member, of his death, gave deceased a decent burial, and thereafter demanded payment of the share of the relief fund to which she was entitled, which being refused, suit was instituted.

■ There is no controversy in regard to the amount of appellee's share of the relief fund, if she is entitled to recover, as appellant admits in its brief that: "* * * the evidence shows that if Richard Walker, deceased, had been in good standing and he and his beneficiary had fulfilled all duties and obligations imposed upon him or them, that his beneficiary would have received the sum of Four Hundred Fourteen ($414.12) Dollars and twelve cents * * *"; the amount mentioned being appellee's share of the relief fund collected by appellant from all subordinate lodge members during the Masonic year (1932–1933), as provided in section 8 of the constitution. It is obvious, we think, that the subordinate lodge secretary was the officer to whom members were required to pay relief and lodge dues, and that it was the duty of such officer to remit same to the grand secretary, who was authorized (section 10 of the constitution) to issue to beneficiaries relief checks for the amount due, first to the wife, etc. We do not deem it necessary to summarize the evidence on the decisive issues, that is, whether or not Richard Walker paid to the secretary of the subordinate lodge the December, 1932, installment of $7, only to say that the evidence was sharply conflicting, but, in our opinion, was sufficient to authorize the finding by the jury, to the effect that the installment was paid by Walker; hence we adopt the finding as our conclusion on the issue.

■ Counsel for appellant argues that, the secretary of the subordinate lodge not being an agent of the Grand Lodge for the collection of relief dues, appellant would not be liable (not having received the dues), even though Walker paid same to the secretary of the subordinate lodge prior to December 10th.

We cannot adopt the view of appellant in regard to this matter. Isolated language appearing in sections of the constitution, considered to itself, doubtless, bears the construction contended for, but, when considered in the connection used and with reference to other provisions, we do not think it can be correctly said that the secretary of the subordinate lodge was not the authorized agent of the Grand Lodge to collect from the individual members relief and other Grand Lodge dues. The society being composed of a grand and subordinate lodges, necessarily, its contact and dealings with individual members is through the medium of the local lodge and its officers, in fact, the corporate

entity—that is, the Grand Lodge—has no vital existence aside from local lodges. These act in a dual capacity; in regard to purely local affairs, they act independently of the Grand Lodge; but, in regard to the collection, report, and remittance of relief and other dues pertaining to the business of the Grand Lodge, necessarily, the local lodge and its officers act in a representative capacity.

While the constitution and by-laws of the society are inartistically drawn, prolix, abounding in words and redundances, and at places apparently contradictory—yet, we think it obvious that the secretary of the subordinate lodge is the designated agent of the Grand Lodge, to collect relief and other dues, and is charged with the duty of remitting same to the grand secretary. Specific provision to this effect are found, besides many implications are to the same effect. Section 9 of article 6 is specific, reading as follows: "All Masters and Secretaries or Officers of a local lodge, found guilty of holding in their possession and failing to send the Relief dues of a Master Mason paid to the local Secretary for the purpose of sharing in the Grand Lodge Relief Fund in event of death, to the Grand Secretary when due, shall, upon due trial and conviction, be expelled from Masonery or the Order, and prosecuted in the Criminal Courts of the State. Each member desiring to share in the Relief shall pay all Relief dues and fees to the Secretary of his Lodge, and no member shall pay Relief dues to any Officer of his Lodge, except the Secretary, and the Secretary shall receipt all members for all Relief and monthly dues on official Lodge receipts, which shall be furnished to him by the Lodge." Also section 13 of article 6 provides that all subordinate lodges are independent in the control of their local matters, except in regard to "relief and Grand Lodge dues." Again, section 16 of article 7 provides that, "No Local Lodge or its Officers shall ever be recognized as an agent of the Most Worshipful Grand Lodge Free and Accepted Masons of Texas, except to collect Relief and Grand Lodge dues, but all lodges are separate and independent of the Grand Lodge in control of all of its financial and charity affairs affecting its membership. * * *" In section 12, subdivision 3, of article 8 of the constitution, provision is made for the cancellation of charters of subordinate lodges for withholding from the Grand Lodge relief

money of a member who has made payment within the time prescribed; and in section 9 of article 6 provision is made for expelling from Masonry "all Masters and Secretaries or Officers of a local Lodge found guilty of holding in their possession and failing to send the Relief dues of a Master Mason paid to the Local Secretary for the purpose of sharing in the Grand Lodge Relief Fund in the event of death. * * *"

Standing alone, the last paragraph of section 16, article 7, providing that, "The only agents of the Grand Lodge shall be the elective, appointive, and fully commissioned Grand Lodge Officers elected by the Grand Lodge or appointed and commissioned by the Grand Lodge or the Grand Master, and no Lodge, Master, Secretary, or other persons shall ever be recognized as agents of the Most Worshipful Grand Lodge Free and Accepted Masons of Texas," would forbid the secretary of a subordinate lodge to act as agent for the Grand Lodge for any purpose, but, when considered in connection with other provisions, and especially the immediately preceding provision of the same section, to wit, "No Local Lodge or its Officers shall ever be recognized as an agent of the Most Worshipful Grand Lodge Free and Accepted Masons of Texas, except to collect Relief and Grand Lodge dues," we readily understand that, generally, the Grand Lodge officers mentioned are the society's agents, but that local lodges and their officers (the secretary) are authorized to "collect Relief and Grand Lodge dues." Again section 1 of article 11, after mentioning different powers that may be exercised by subordinate lodges in regard to local problems, concludes, "but nothing here stated shall be construed to make a subordinate lodge or its officers the agent of the Most Worshipful Grand Lodge of Free and Accepted Masons of Texas," meaning by the latter provision that the Grand Lodge would not be bound by any act of a subordinate lodge, or its officers, in regard to their local matters, hence the language quoted is not a qualification, in any sense, of the specific power elsewhere given local lodges and their officers with respect to relief and Grand Lodge dues.

So, we think the conclusion inescapable that the secretary of the local lodge, of which Richard Walker was a member, was authorized to collect from him relief dues, and the jury having found

that, prior to the date when he would have been delinquent, Walker paid the December, 1932, installment, it became the duty of the secretary to report the collection and remit same to the grand secretary, and, although failing to discharge that duty (if he did), nevertheless appellant would be liable to Walker's beneficiary for the payment of the share of the relief fund to which she was entitled.

But it is further contended that appellant is not liable for the acts of its own agent—the Secretary of the subordinate lodge—in failing to remit the dues, collected from deceased as found by the jury, because of the provision of section 13 of article 6 of appellant's constitution, which, after providing in effect that the subordinate lodge is authorized to collect from its members (through its secretary) all relief and Grand Lodge dues, provides that: " * * * The Most Worshipful Grand Lodge Free and Accepted Masons of Texas shall not be bound to pay Relief benefits to a dead Master Mason, where or when a lodge or any of its Officers collect Relief and Grand Lodge dues from its members, and fail or refuse for any cause to send all such moneys or Relief and Grand Lodge dues so paid by a Master Mason to the Grand Secretary on or before September 15, or on or before December 15, as the case may be, and in case of the death of such a Mason, * * * the Grand Lodge shall not be held responsible to the beneficiary for Relief benefits, and no member's beneficiaries shall be allowed to draw Relief benefits, unless the member paid or caused to be paid his first installment of Relief Dues on or before September 10, and the second installment of Relief December 10, of each year to the Secretary of his Lodge, and the Secretary shall send the same to the Grand Secretary not later than September 15, or December 15, as the case may be."

We do not think that, in advance, appellant could relieve itself of its obligation to pay beneficiaries relief benefits, as was attempted, because, in our opinion, the provision of the constitution just quoted, as a matter of law, is against public policy and void. We see no difference in principle between a contract of the nature of the one under consideration that, in advance, relieves the principal from liability for the wrongful acts and defaults of its agent, and a contract that, in advance, relieves an employer from liability for his own negligence. Contracts of the latter nature, generally, are held to be in derogation of common law, against public policy and void. See discussion and citation of authorities in Johnston v. Fargo, 184 N.Y. 379, 77 N.E. 388, 7 L.R.A.(N.S.) 537, and case notes pages 537, 543, 6 Ann.Cas. 1. The public policy of a state is determined by its constitution, laws and judicial decisions. One of the well-settled doctrines of this state is the common-law rule that the principal will be held liable to third persons for all acts committed by the agent, on behalf of the principal, within the scope of the agency. Without this rule, the rights of third persons, dealing through agents, could not be adequately protected. But there is more involved in the preservation of the doctrine under discussion than merely the interest of a particular litigant, as in the instant case. The public at large is interested in its inviolability, for, if a principal who, by reason of the nature of the business, must deal with the public through agents, is permitted, in advance, to contract away his liability, both principal and agent would likely become indifferent to the rights of third persons and encouraged to act dishonestly in their dealings. As the common law has been adopted in this state, the doctrine under discussion is just as binding as if specifically enacted by the Legislature, hence we must assume that the public is interested in its maintenance as a wholesome public policy. It may be said that the parties contracted on equal terms, hence that the freedom of contract is trenched upon, if it be held that such a limitation by the principal on his liability to third persons is against public policy and void. We are of opinion, however, that it is only in theory that the parties dealt on equal terms; for the reason that the business of such organizations as usually conducted is of such a nature as to forbid dealing on equal terms. But, be that as it may, the doctrine that holds the principal liable for the acts of his agent within the scope of authority is so fundamental in the law of principal and agent, and so wholesome and beneficial to organized society, involving the general welfare, as to demand that this common-law rule of liability, be kept without the realm of barter and sale.

Assignments fifth, sixth, and seventh are too general to merit consideration. In general terms they complain of the judgment, for reasons set out in appellant's motion for a new trial. Clearly, each of the assignments is multifarious,

hence violative of both the statute (article 1844, as amended in 1931 [Vernon's Ann. Civ.St. art. 1844]) and the governing rules prescribing that each assignment shall distinctly specify the ground relied upon.

However, under other assignments not subject to objection, we have given full consideration to appellant's contention, also urged under the objectionable assignments, to the effect that, as appellee failed to establish her cause, the court should have directed verdict for appellant and rendered judgment accordingly.

 Among other grounds urged under sixth assignment is that, the court erred in allowing appellee an attorney's fee and 12 per cent. damages for failure to pay the claim within 60 days after demand; the contention being that no law authorized such allowances in a case of the nature of the one under consideration. As the judgment discloses that the court did allow attorney's fees and damages, if appellant is correct in saying that same were not authorized by law, fundamental error is thus suggested, and will be so considered. However, we cannot agree that the judgment was erroneous for the reason stated. The statute authorizing recovery of reasonable attorney's fee and 12 per cent. damages is article 4831a, Vernon's Ann.Civ.St., part of chapter 48, Acts of the 42d Legislature, amending the statutes relating to fraternal benefit societies, etc. The article reads: "Provided that when a Fraternal Benefit Society operates under the provisions of this Act, and in all cases where a loss occurs and the society liable therefor shall fail to pay the same within sixty (60) days after' the demand therefor, such society shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent. damages on the amount of such loss, together with reasonable attorney's fees for the prosecution and collection of such loss." Appellant seizes upon the language, to wit, "such society shall be liable to pay the holder of such policy," contending that, as Walker was not a policy holder, appellee's claim was not within the meaning of the statute. Ordinarily, it is true that the term "policy," used in connection with insurance, imports a written contract of insurance; but did the Legislature mean that? We do not think so. Prior to the enactment of article 4831a, the statute (article 4736 [amended Vernon's Ann. Civ.St. art. 4736]) made provision for the collection, by holders of life, health, and accident policies, of reasonable attorney's fees and damages, for failure to pay all claims, etc.; but, as the courts held the statute inapplicable to fraternal benefit societies, the Forty-Second Legislature enacted article 4831a, extending similar relief to beneficiaries having claims against such societies. The caption of the act, expressing its different purposes, reads: "and providing for penalty and attorney's fees for failure to pay claims." If construed as contended by appellant, the article in question would be ineffective and out of place in the chapter regulating fraternal benefit societies, in that the chapter neither contemplates nor provides for the issuance of policies; on the contrary, article 4834 provides that the articles of association, the constitution and by-laws of the society, the application for membership, medical examination, and all amendments, shall constitute the agreement between the society and its members.

Failing to find reversible error, the judgment of the trial court is affirmed.

Affirmed.