603 So.2d 835 (1992)
Gary CRAWLEY
v.
AMERICAN PUBLIC LIFE INSURANCE COMPANY.
No. 07-CA 59513.
Supreme Court of Mississippi.
June 3, 1992.
Robert P. Shepard, Murphy & Shepard, A.M. Murphy, Lucedale, for appellant.
Thomas L. Kirkland, Jr., Kirkland Barfield & Panter, Jackson, for appellee.
En Banc.

ON PETITION FOR REHEARING
HAWKINS, Presiding Justice, for the Court:
The petition for rehearing of the appellee American Public Life Insurance Company is denied. The petition for rehearing of the *836 appellant Gary Crawley is granted, the original opinion withdrawn, and the following is the opinion of the Court.

FACTS
This appeal being from an order sustaining a motion for summary judgment on behalf of the defendant American Public Life Insurance Company (American Public) and dismissing Crawley's complaint, we relate the facts favorable to Crawley.
Crawley and Betty Crawley married July 17, 1971. Three children were born of their marriage, namely: Gary Thomas, born in 1975; David Travis, born in March, 1976; and Kenneth Dwayne, born in 1978. Crawley was employed as a game warden with the Department of Wildlife Conservation. Betty was granted a divorce from Crawley in 1982, following which the couple became reconciled and remarried in 1983. The second marriage lasted only about a month, and Betty was again granted a divorce from Crawley July 15, 1983, in the chancery court of George County.
Pertinent provisions of the divorce decree state:
2.
That paramount custody and control of the minor children born of the marriage, namely; Gary Thomas Crawley, David Travis Crawley and Kenneth Dwayne Crawley, is vested with Betty Crawley, with Gary Crawley having the following reasonable rights of visitation:
a. Alternate weekends from 5:00 p.m. on Fridays until 5:00 p.m. on Sundays.
b. Christmas visitation from 2:00 p.m. on Christmas Day until 5:00 p.m. the 31st day of December of each year.
c. Alternate Thanksgivings and Easters with Gary Crawley having Thanksgiving visitation during the odd numbered years and Easter visitation during the even numbered years.
d. Summer visitation for the first and second week of June and the first and second week of August of each year.
e. Or as is mutually agreeable among the parties.
3.
That Gary Crawley shall pay unto Betty Crawley the sum of $408.00 per month child support beginning on August 1, 1983, and alike [sic] payment each and every month thereafter until further order of this Court
4.
That Gary Crawley is hereby ordered to pay all reasonable medical, dental and hospitalization expenses of the minor children not otherwise covered by insurance.
As a state employee Crawley and his dependents were insured under the medical and hospital coverage authorized by the State to all state employees. On May 1, 1984, Jennifer Hughes, an insurance agent salesman for American Public, a Mississippi insurance corporation, solicited Crawley along with other state employees to take out a supplemental policy covering cancer and other specified dread diseases. When Hughes was questioning Crawley in filling in the application, she asked him his wife's name and he told her that he was single. She then asked his children's names, and whether they lived with him or not. He told her their names, and also told her that they did not live with him, but lived with their mother.
Crawley then asked her if there was any problem with coverage with the children living with their mother. According to him, she told him it made no difference as long as he had their names on the policy and kept the premiums up. Crawley then signed the application.[1] According to Crawley, later in the year 1984 there was another meeting between agents of American Public and state employees, and he was again told by an agent that his children were covered under his policy, even though they lived with their mother.
*837 In the first paragraph of the application, there is a line on which is printed "Spouse's Name and Date of Birth (if family coverage)." Following this there is handwritten: "single w/children."
Under paragraph 2 the application reads:

COVERAGE Policy Daily
APPLIED FOR: Form Fam. Ind. benefit/Unit
Cancer & SCSD1 (in X 60.00 (in
specified handwriting) (checked handwriting)
disease in ink)

A copy of the application is attached as an appendix.
On May 18, 1984, American Public issued policy number A77541 to Crawley, effective June 1 of that year. The monthly premium was $9.60, and the policy schedule states "FAMILY COVERAGE." A higher monthly premium was charged for family coverage than an individual. Had Crawley been issued a policy restricted to individual coverage, his monthly premium would have been $5.30. The policy authorized $125.00 per day hospitalization benefits to an insured. The policy provided coverage by the following paragraph:
Company, Our, We, Us means the American Public Life Insurance Company.
You, Your means the Insured. If this is an individual policy, it will mean only the person named as Insured in the Policy schedule. If this is a family policy, it will mean the person named in the Policy Schedule, their named spouse, and all dependent children as stated below.
Dependent Child refers to Your unmarried natural born children, stepchildren, or legally adopted children living with you and under the age of 21 (25 if a full time student), including newborn children from the moment of birth. An unmarried, mentally retarded or physically handicapped child insured under this policy and unable to provide self support shall be considered a dependent child regardless of age. (Underscoring added)
In February, 1986, Crawley's son Kenneth was hospitalized for six days in Mobile, Alabama, with viral meningoencephalitis. (R. 254) Crawley was unaware that this was a disease covered under the policy and made no claim.
In July, 1987, there was another meeting between representatives of American Public and state employees about their insurance policies. When Crawley was interviewed, he told the agent he had no wife. She then asked his children's names and dates of birth, and he told her. She asked him if they lived with him, and he told her they did not, but lived with their mother. He did get them periodically under the divorce decree, and whenever else he wanted them, however. He also told her that he was responsible for the medical bills and had to pay child support.
During this interview the agent asked him if his children had certain diseases which she named. He told her they had not, but that his youngest son Kenneth had encephalitis the previous year. The agent asked him if he had made a claim, and he told her he had not, because he did not think this disease was covered by his policy. The agent checked the file and told him the disease was covered, that he was entitled to $150 a day while Kenneth was in the hospital. The agent left to make a telephone call, returned and told Crawley he would receive a claim form in the mail, and for him to fill it out and mail it in.
When Crawley received the claim form, he got a copy of the hospital bill that stated the days Kenneth was in the hospital and the reason he was there. Upon receipt of this information, Crawley, on August 21, 1987, mailed in the claim to American Public. Approximately two weeks later Crawley called American Public about the claim, and was told by a lady representative that the company was awaiting the test results from the Mobile hospital. He then asked her why he had not been told to get this information to begin with, and he would *838 have done so. She replied that in this way it would save him the expense.
A week or two later Crawley again telephoned American Public and was told they were waiting on the test results, and that their medical examiner would have to look at the test results.
Crawley made still another call some time later and was told that the doctor was supposed to go over the results "Thursday" and that everything else was in order, and he should get his check the following week.
Crawley called the next week, and was then told the company had a problem; they had discovered that "Kenneth doesn't live with you." He told her that the company had known this all along, because he had informed them of this fact when the insurance was sold to him.
He asked her then if the company was going to pay, and was told the company was not liable.
On February 16, 1988, Crawley filed a complaint against American Public in the circuit court of George County for $750 actual damages, $50,750 compensatory damages, and one million dollars punitive damages.[2]
American Public's defense was that Kenneth was not included under the policy because he was "not living" with Crawley when he became sick, that there had been no misrepresentation to Crawley that he would be covered, but even if there had, the sales agent had no authority to waive a policy exclusion, or to insure someone who would not otherwise be covered by the policy. American Public said that when the company received Crawley's claim, it noticed he and Kenneth lived at different addresses.
On July 27, 1988, the Friday before trial on the Monday following, the circuit judge held a pretrial conference on American Public's motion for summary judgment. The circuit judge expressed his view that this was not a case for punitive damages and that he was inclined to so hold.
Counsel for Crawley then told the circuit judge that if he was going to grant a summary judgment on punitive damages, he "might as well grant them a full Summary Judgment and we will take it up on appeal and be done with it."
The court responded: "I was wondering if you wouldn't be in a better position to do that."
The circuit judge, evidently feeling that this Court had nothing better to do than consider this case, closed the conference with the observation: "Let me go ahead and sustain their motion and let you take it up."

LAW
It is obvious from this record that while the circuit judge was of the opinion this was not a case for punitive damages, he clearly recognized that American Public was not entitled to summary judgment as a matter of law on Crawley's claim for actual damages as it manifestly was not. He nevertheless granted a summary judgment on the entire complaint, thus granting a de facto interlocutory appeal through the back door.
We cannot look with favor on a trial court making a ruling it knows is contrary to law solely to give this Court jurisdiction of an appeal. It shows little regard for our crowded docket, our time constraints, and the thousands of litigants who must abide their time to get their appeals heard.
Moreover, it is highly unlikely that either party has gained from having to hear it on a judgment sustaining a motion for summary judgment as opposed to letting the matter go to trial and then perfecting an appeal.
Also, as we will presently demonstrate, this case demonstrates the wisdom in any circuit judge withholding a decision on whether punitive damages should go to the jury until both sides have completed their trial testimony and rested.

*839 I. NO COVERAGE
We examine first American Public's contention on appeal that even if Hughes told Crawley his children would be covered under the policy, which it denies, this made no difference, anyway. Hughes, as sales agent, had no authority to bind the company and afford insurance coverage excluded from the policy. Grain Dealers Mutual Insurance Co. v. Ellis, 234 So.2d 925, 927 (Miss. 1970); Employers First Insurance Co. v. Speed, 242 Miss. 341, 133 So.2d 627 (1961); Hartford Accident & Indemnity Co. v. Lockard, 239 Miss. 644, 124 So.2d 849, 854 (1960); Maryland Casualty Co. v. Adams, 159 Miss. 88, 131 So. 544, 546 (1931).
These cases deal with instances where an insurance agent, unabetted by a home office, and solely on his own made an unauthorized representation. This case presents a markedly different scenario.
In American Public's form application, Crawley or someone for American Public wrote "single w/children," and under coverage "Family" as opposed to "Individual" insurance was checked. This was a clear signal that Crawley intended to cover his family. This policy American Public issued showed it was a family, not an individual policy. American Public charged a family, not an individual rate in its monthly premium.[3] Moreover, in its sales program, American Public paid a higher commission to its agents for sales of family policies than individual policies.
As a matter of common knowledge, American Public had to know that there are thousands of children of divorced parents in Mississippi in which the non-custodial parent is required to carry hospital insurance. Taking out insurance is no different than any other contractual relationship. It is always important to get a clear understanding between the parties to begin with. If American Public had conscientiously wanted to exclude children not living with a parent from coverage, this could have been made abundantly clear in the application. For example, it would have been quite simple for the application form to state that under no circumstances would a child not actually living a major portion of the time with the insured parent be covered.
When American Public received Crawley's application, it was put on notice that this applicant intended to receive more coverage than simply for himself. It did nothing to correct this misapprehension, but instead issued a policy for family coverage, thus compounding the ambiguity. Only by reading that one phrase in the body of the policy, "living with you," was there any way for Crawley to have any notice his children might not be covered. American Public felt no compunction in receiving greater monthly premiums for family coverage than it would have received from Crawley as an individual.
As noted, only by reading that one phrase in the body of the policy, "living with you," was there any way for Crawley to have any notice his children might not be covered. Yet, even if he had read it, having received an assurance from the agent that he was covered, and having received a policy stating that it was a family policy, and paying premiums for a family as opposed to an individual, he was certainly entitled to believe that this provision had been waived.
This is not quite, as American Public would have it, a simple case of granting insurance coverage to persons for which no coverage whatever is authorized under the policy. Employers First Insurance Co., 242 Miss. at 346, 133 So.2d at 629. The policy stated "if this is a family policy," which it was, then all "dependent children," which Crawley's child Kenneth was, were covered, provided the children were "living with" Crawley. Under the facts of this case, a fact finder would be warranted in finding that this one provision for coverage, "living with you," had been waived, and American Public was estopped from denying a broader coverage than that specified. 45 C.J.S. Insurance, § 674 (1946); Annotation, Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by *840 Its Terms or Expressly Excluded Therefrom, 1 A.L.R.3d 1139 (1965). See also, Kane v. Aetna Life Insurance, 893 F.2d 1283, 1285-86 (11th Cir.1990) (insurance company was estopped from denying coverage of employee who had adopted hospitalized child in alleged reliance on representation of insurance company's agent that group health policy would provide coverage for child's medical expenses); Peninsular Life Insurance Company v. Wade, 425 So.2d 1181, 1183-84 (Fla.App. 1983) (insurer was estopped to deny full coverage for wife's death after husband's reliance on explicit misrepresentations made by insurer's agent and employee); Allstate Insurance Company v. State Farm Mutual Automobile Insurance Company, 67 Or. App. 623, 679 P.2d 879, 881-82 (1984) (insurer was estopped from denying coverage under parents' liability policy where son reasonably relied on agent's representation that he was covered by insurer). Morris v. American fidelity Fire Ins. Co., 253 Miss. 297, 173 So.2d 618, 626 (1965), "It is our opinion that exclusionary clause (g) does not prevent recovery in this case." Also, State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So.2d 805 (Miss. 1970); Home Ins. Co. v. Thunderbird, 338 So.2d 391 (Miss. 1976); Maryland Cas. Co. v. Beckham, 163 Miss. 836, 143 So. 886 (1932).
Accepting as we must for purposes of summary judgment Crawley's version of the facts, it would be unconscionable for any Court to hold that an insurance company could send forth a platoon of soliciting agents who assure prospective policyholders that dependent children living with another parent are covered and then deny coverage because of this one phrase, especially after issuing a "family" policy and collecting family rate premiums.
Crawley also argues that, aside from any misrepresentation, his son was not excluded from coverage. Mississippi Benefits Association v. Majure, 201 Miss. 183, 29 So.2d 110 (1947). It should be noted that this is not a case in which one parent was given complete custody with only a right of reasonable visitation being given the other parent, but a divorce decree in which the wife was given "paramount" custody, with the father entitled to have the children with him at specified, fixed times. Provisions in insurance contracts are to be interpreted in favor of the policyholder. Mutual of Omaha Ins. Co. v. Walley, 251 Miss. 780, 171 So.2d 358 (1965); Government Employees Ins. Co. v. Brown, 446 So.2d 1002 (Miss. 1984). There is nothing in the phrase "living with you" which indicates it must be all of the time, most of the time or just part of the time. We are not required to address this question, however, because we hold that under the facts presented us on a summary judgment, it made no difference whether Kenneth was living with Crawley or not. And, Crawley never considered that his children were "living" with him, conceding several times in his deposition that they lived with their mother. He never claimed that he told the insurance agents anything other than the children were in fact living with their mother.

II. SUMMARY JUDGMENT DENYING PUNITIVE DAMAGES
The circuit judge erred in granting American Public a summary judgment on the issue of punitive damages. This matter should have been deferred until both sides had completed presentation of their evidence at trial.
Again, viewing the record in favor of Crawley, we find evidence from which the jury could conclude:
1. The denial of Crawley's claim was not a clerical error but a deliberate choice made by executives of American Public.
2. American Public had a system of selling insurance which encouraged agents to be over-eager in their sales pitches. They were commission compensated, and their commissions came primarily, if not altogether from the first premium payments. They received higher commissions on family than on individual coverage.
3. The selling agents either did not know any better, or deliberately misrepresented that the Crawley children would be covered. American *841 Public had some responsibility for soliciting agents who recklessly or deliberately made material misrepresentations.
4. The American Public form application for insurance along with its policy which stated it was a "family" policy, and at the same time limiting coverage by one phrase in the body of the policy could very well have been calculated to do precisely what American Public did in this case, collect premiums for which it assumed no risk. Its agents could tell any policyholder his children were covered while collecting premiums, only to have American Public deny coverage when a child was hospitalized with a dread disease. Shell games are for carnivals, not the insurance industry.
5. The coverage was in a limited, and relatively small, amount thus enabling American Public to better play the odds, because many policyholders, rather than go to the expense of a trial, would simply abandon their claims. Small, limited coverage health and accident insurance policies afford fertile ground for shell game coverage.
Whether there was a widespread practice of treating other policyholders as Crawley was treated was information that American Public, upon request for discovery, should have been required to reveal.[4]
In numerous cases this Court has had its say about when and under what circumstances punitive damages are appropriate, reiterated at length in Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss. 1990). In this instance we need no further fine tuning as to punitive damages because this is not a borderline, but instead a bull's eye case.
What does an insurance company owe its policyholders and those it induces to become policyholders? First, simple, open honesty and fair dealing in taking reasonable steps to be certain that the insured is not being misled as to his coverage, but understands it; and second, an insurance company, just like everybody else, should pay its bills in full when they are due. The law of this state requires no more; neither will it tolerate less.
In Andrew Jackson, 566 So.2d at 1189, we quoted from a decision of the California Supreme Court eighty years ago:
It is a matter almost of common knowledge that a very small percentage of policy holders [sic] are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous . .. and in their numerous conditions and stipulations furnishing what may be veritable traps for the unwary... . [C]ourts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. (Emphasis original)
Raulet v. Northwestern Nat'l Ins. Co. of Milwaukee, 157 Cal. 213, 230, 107 P. 292, 298 (1910).
For the reasons stated, we reverse the granting of summary judgment both on actual and punitive damages and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
McRAE, J., specially concurs with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
*842 
McRAE, Justice, specially concurring:
I write separately to state simply that the term "family" is an all encompassing term in modern society. The fact that two parents no longer live together as man and wife does not terminate the parental rights of either. They are still a family with reference to the parents and the child. This means simply that while the child may stay or live in the home of only one parent, the child is still a minor and often dependent on both. By the same token, under our wrongful death statute, a child shares equally from any proceeds recovered regardless of where he/she lives. See Miss. Code Ann. § 11-7-13 (1972 and Supp. 1991).
With divorced parents, the child usually has more than one place to "hang his hat" even though he/she may only stay there over the weekend or once a month. It should not matter. Under the law, the child still has two parents and should be and is considered a resident of the homes of both until he/she reaches majority or becomes fully emancipated.
Most insurance companies, when charging for dependent coverage, charge only one fee regardless of whether there are one or ten dependents. I would find that as a matter of law, that a dependent child, regardless of where he/she lives, is a resident of either parent's home whether they live together or apart. Any language in an *843 insurance policy to the contrary is against public policy.
DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ., join this opinion.
NOTES
[1] By affidavit Hughes disputed making any such statement to Crawley. It is not clear whether Crawley or someone else filled in the application.
[2] The punitive damages claim was amended, reducing it to $200,000.
[3] The family rate was $9.60 a month, individual $5.30 a month.
[4] By interrogatories propounded to American Public, Crawley sought to get this information. American Public first responded that it was irrelevant, and later that it was too burdensome, that it would have to "design a new computer program," and would encompass "approximately 9,000 files." We find this unpersuasive. A trial court should require far more of American Public than this blank assertion before relieving it of furnishing such information. We note this because this same problem could recur in preparation for trial on remand.