CELTIC LIFE INSURANCE
COMPANY, Petitioner,

v.

John D. COATS, Jr., Respondent.

No. D–2775.

Supreme Court of Texas.

June 22, 1994.

Opinion Concurring on Rehearing by
Chief Justice Phillips Nov. 3, 1994.

97

Alice M. Giessel and James E. Ebanks, Houston, for petitioner.

Joe K. Longley, Tim Labadie and Philip K. Maxwell, Austin, for respondent.

SPECTOR, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, DOGGETT, CORNYN and GAMMAGE, Justices, join.

We grant John D. Coats' motion for rehearing and withdraw our prior opinion and judgment. The following is now the opinion of the Court.

1. *See* Tex Ins.Code art. 21.07, § 1(a) (requiring that any person desiring to act as an insurance

This case presents three issues relating to an insurance company's liability for its agent's representations: first, whether the company's liability depends on its authorization of misrepresentations; second, whether reliance on the representations is an element of recovery; and third, whether the insured's damages should be trebled when the misrepresentations were not committed "knowingly." The court of appeals affirmed the trial court's judgment on a jury verdict against the insurer. 831 S.W.2d 592. We likewise affirm, but modify the court of appeals' judgment by deleting the award of trebled damages.

I.

Kenneth Harrell, a duly-appointed agent for Celtic Life Insurance Co.,[1] visited Aloha Pools in September 1984 and met with its owner, John Coats, to discuss health insurance for Aloha's employees and their families. Coats stated that he wanted a policy providing benefits for psychiatric care that would be equal to or better than the $20,000 coverage provided by his current policy. Coats explained that he needed such coverage because his oldest son had previously required psychiatric care, and he was concerned that his younger son might require similar care. Harrell responded that he understood Coats' needs fully, having experienced similar financial difficulties in providing psychiatric care for his own son.

Harrell subsequently proposed that Coats purchase a specific policy written by Celtic—a policy that provided a maximum lifetime hospitalization benefit of $1 million. Harrell did not point out that psychiatric benefits under the policy were limited to $10,000.

Coats asked his business manager, Paula Englemann, to review Celtic's brochure and discuss the matter further with Harrell. Englemann noticed the $10,000 limit on benefits for psychiatric care, and questioned Harrell about its meaning. Harrell assured her that the $10,000 limit applied only to out-patient psychiatric care. Based on that representation, Englemann recommended to Coats that

agent be appointed by a duly-authorized insurance carrier).

he purchase the Celtic policy, and Coats agreed.

In January of 1985, Kenneth Harrell obtained enrollment cards, filled out an application, and collected an initial premium in order to obtain Celtic coverage for Aloha's employees. He then forwarded the enrollment cards, the application, and the premium check to Celtic. Celtic then sent an insurance policy to Harrell, who delivered it to Coats.

During the following August, Coats' son was admitted to Shoal Creek Hospital for psychiatric care. Coats filed a claim for his son's treatment; but despite Harrell's continued assurances that the in-hospital psychiatric treatment was covered by the $1 million hospitalization limit, Celtic paid only $10,000 of the $27,000 in medical expenses.

Coats filed this suit seeking relief under article 21.21 of the Texas Insurance Code and the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), TEX.BUS. & COM.CODE § 17.41–.63. After hearing the evidence, the jury made the following findings:

(1) Harrell made misrepresentations concerning the terms, benefits, provisions, or conditions of the insurance policy such as to be a producing cause of damages to Coats, but he did not do so knowingly;

(2) Harrell had authority to explain, on Celtic's behalf, the benefits of the insurance policy; and

(3) Harrell did not have the authority of Celtic to make representations concerning the insurance policy's terms, benefits, provisions, or conditions which were outside the scope of the written document.

The jury also found that $17,000 would fairly and reasonably compensate Coats for his damages.[2]

**2.** This figure apparently represents Coats' expenses for psychiatric care, minus the $10,000 that Celtic actually covered. Celtic does not challenge this measure of damages.

**3.** The acts listed include, among other things, soliciting insurance on behalf of an insurance

The trial court rendered judgment on the verdict in favor of Coats, and the court of appeals affirmed. 831 S.W.2d 592.

## II.

Celtic argues that it should not be held responsible for Harrell's representations for two reasons: first, Harrell was a mere soliciting agent, and as such lacked authority to bind Celtic; and second, the jury's answer to the third question—which was submitted over Coats' objection—establishes that Harrell was acting outside of his authority as Celtic's agent. We reject both arguments.

■ In the contexts of life, health, and accident insurance, the Texas Insurance Code makes no distinction between recording agents and soliciting agents. *See May v. United Serv. Ass'n of America*, 844 S.W.2d 666, 669 n. 8 (Tex.1992) (discussing TEX.INS. CODE art. 21.14, § 20). Rather, agents are defined generally: section 21.02 of the Code lists various acts performed in the ordinary course of providing insurance,[3] and states that any person who performs these acts "shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all liabilities, duties, requirements and penalties set forth in this chapter."

■ There is no dispute that Harrell performed, on Celtic's behalf, at least some of the acts listed in section 21.02. Thus, under that provision, Harrell was clearly Celtic's agent.

■ An insurance company is generally liable for any misconduct by an agent that is within the actual or apparent scope of the agent's authority. *See, e.g., Royal Globe Ins. Co. v. Bar Consultants*, 577 S.W.2d 688, 693–94 (Tex.1979); *Grand Lodge Free and Accepted Masons v. Walker*, 110 S.W.2d 945, 949 (Tex.Civ.App.—Dallas 1937, no writ); *see generally* George J. Couch et al., COUCH ON INSURANCE 2D § 26A:265, at 506 (rev. ed.

company; transmitting an application or policy to or from the insurance company; receiving, collecting or transmitting an insurance premium; and adjusting a loss on behalf of an insurance company.

1984). This rule is based on notions of fairness: "since the principal has selected the agent to act in a venture in which the principal is interested, it is fair, as between him and a third person, to impose upon him the risk that the agent may exceed his instructions." *Royal Globe*, 577 S.W.2d at 694 (quoting *Standard Distributors v. FTC*, 211 F.2d 7, 15 (2d Cir.1954) (Hand, J.)).

In the present case, the jury was asked whether Harrell had authority to explain, on Celtic's behalf, the benefits of the insurance policy. The instructions accompanying this question explained that "authority" of an insurance agent can be actual or apparent; and in defining apparent authority, the instructions explained, among other things, that "[a]n insurance company may so clothe the agent with signs or indications of authority so as to lead a reasonably prudent person to believe that the agent actually has such authority." The jury answered the question affirmatively.

■ Celtic does not contend that Harrell's representations were so absurd that no reasonable person could have believed Harrell was acting within the scope of his authority.[4] Nor does Celtic assert any other challenge to the jury's finding that Coats had authority to explain the policy. Thus, under common-law rules of agency, Celtic is liable for the representations Harrell made in explaining the policy.

■ Celtic's liability is not affected by the finding that Harrell lacked authority to make representations outside the scope of the written document. In determining a principal's vicarious liability, the proper question is not whether the principal authorized the specific wrongful act; if that were the case, principals would seldom be liable for their agents' misconduct. Rather, the proper inquiry is whether the agent was acting within the scope of the agency relationship at the time of committing the act. *See* Leonard Lakin and Martin Schiff, THE LAW OF AGENCY 144–45 (1984). The misrepresentation in the present case was made in the course of explaining the terms of the policy—a task the jury specifically found to be within the scope of Harrell's authority. Thus, Celtic cannot escape liability on the basis that it did not authorize particular representations concerning the policy.

### III.

Celtic asserts that Harrell is not entitled to recover under the DTPA because there has been no showing that Coats relied on Harrell's representations. The trial court refused Celtic's requested issue on reliance after Coats objected on the basis of *Weitzel v. Barnes*, 691 S.W.2d 598 (Tex.1985).

In *Weitzel*, we determined that the legislature had specifically rejected reliance as an element of recovery under the DTPA. 691 S.W.2d at 600. The legislature chose, instead, to allow recovery when there is proof of a deceptive act or practice that is a "producing cause" of the consumer's actual damages. *Id.* (discussing TEX.BUS. & COM.CODE § 17.50(a)).

■ In the present case, the trial court submitted a question asking whether Harrell made any misrepresentations that were a "producing cause of damages" to Coats. This question, we hold, fairly presented the issue of producing cause to the jury. We decline Celtic's invitation to overrule *Weitzel*.

### IV.

Finally, Celtic argues that the trebling of actual damages was erroneous in view of the jury's finding that Harrell's misrepresentations were not made "knowingly." Celtic points out that since 1979, the DTPA has required that conduct be committed knowingly before damages may be trebled. TEX. BUS. & COM.CODE § 17.50(b)(1). Additionally, by amendment effective April 4, 1985, article 21.21 of the Texas Insurance Code has included a similar requirement of knowing conduct before damages may be trebled. TEX. INS.CODE art. 21.21 § 16(b)(1). Celtic argues that Coats' cause of action did not accrue until August 1985, when his benefits were

---

4. *Cf. Farley v. United Pac. Ins. Co.*, 269 Or. 549, 525 P.2d 1003, 1007 (1974) (agent's representative had authority to interpret contract unless interpretation was "patently absurd"); *see generally* JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 9168 (1981).

denied, so that knowing conduct is required for trebling of damages under either article 21.21 or the DTPA.

■ We agree. A cause of action generally accrues at the time when facts come into existence that authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex. 1990); *Robinson v. Weaver,* 550 S.W.2d 18, 19 (Tex.1977). In *Murray,* we held that a first-party bad faith claim against an insurer generally accrues on the date the insurer denies coverage. 800 S.W.2d at 828. Likewise, in the present case, we hold that Coats' claim under article 21.21 accrued on the date that Celtic first denied coverage for his son's psychiatric care. Accordingly, Coats' claim is governed by the 1985 amendment to article 21.21. *See* Act of March 19, 1985, 69th Leg., R.S., ch. 22, § 4, 1985 Tex.Gen.Laws 395, 396 ("This Act applies to a cause of action that accrues on or after the effective date of this Act."). Because the DTPA contained a "knowingly" requirement at all times relevant to this case, we need not determine the accrual date of Coats' DTPA claim.[5] Under either statute, the jury's finding that Harrell did not act knowingly bars an award of trebled damages.[6]

\*  \*  \*  \*  \*  \*

We conclude that Celtic is responsible for its agent's misrepresentations. We modify the court of appeals' judgment to reflect an award of only actual damages, rather than trebled damages; and because attorney's fees were awarded on a percentage basis, we also modify the award of attorney's fees. In all other respects, the judgment of the court of appeals is affirmed.

ENOCH, Justice, concurring.

I agree with the result in this case and join in Parts I and IV of Justice Spector's opin-ion, but write separately to note that the mere authority of an agent to explain the terms of a policy does not render an insurer liable for all of that agent's representations. Several states have limited the insurer's liability to interpretations of the policy that are plausible or not patently absurd. *See Mutual Benefits Life Ins. Co. v. Bailey,* 55 Del. 215, 190 A.2d 757 (1963) (noting that an insured may rely upon a plausible interpretation by an agent); *Flamme v. Wolf Ins. Co.,* 239 Neb. 465, 476 N.W.2d 802, 807–08 (1991) (stating that insured could rely on agent's interpretation of policy that is plausible and not in patent conflict with the printed policy); *Farley v. United Pacific Ins. Co.,* 269 Or. 549, 525 P.2d 1003, 1006 (1974) (quoting Couch on Insurance and finding that representative of insurer's agent had ostensible authority to interpret the insurance contract unless the agent's interpretation is "patently absurd" from the insured's perspective).

I note that in Texas reliance is not an independent element of recovery under the DTPA. *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). However, it is obvious that "reliance on the deceptive act or conduct is necessarily a factor of *producing cause.*" *Id.* at 602 (Gonzalez, J., dissenting). I would conclude that producing cause is present only where the agent's explanation of the policy's coverage is not patently absurd, which necessarily results in the insured's reliance on the agent's explanation being reasonable. *See, e.g., Lewis v. Citizens Agency of Madelia, Inc.,* 306 Minn. 194, 235 N.W.2d 831 (1975) (finding coverage where agent misrepresented to widow the type and amount of coverage on a policy and she relied on the agent's expertise); *Crawley v. American Public Life Ins. Co.,* 603 So.2d 835 (Miss.1992) (estopping insurer from denying coverage where agent represented to divorced father that his chil-

---

**5.** Coats argues that his claim is governed by the version of the DTPA in effect at the time the misrepresentations were made; and that the DTPA incorporated the then-existing version of article 21.21, which did not include a "knowingly" requirement for trebled damages. *See Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 137 (Tex.1988) (construing DTPA to allow incorporation of treble-damage provision in article 21.21). Incorporating a remedy, however,

necessarily means incorporating an accrual date. Thus, Coats' article 21.21 claim accrued on the date benefits were denied, whether the claim is asserted directly under article 21.21 or through the DTPA.

**6.** Because of our holding on this issue, we do not reach Celtic's argument that the courts below erred in awarding trebled prejudgment interest.

dren, who lived with their mother, would be covered).

In this case, though, we are unable to examine whether Harrell's representations were in fact the producing cause of Coats' damages because the reasonableness of Harrell's explanation is not presented to us for review. Consequently, I join in the Court's judgment.

Chief Justice PHILLIPS concurs on rehearing, joined by Justice HECHT and Justice ENOCH.

I concur in the judgment of the Court and join in its opinion, so far as it goes. As the Court makes clear, our holding that an insurer is liable for the tortious misrepresentations of its soliciting agent made in the course of the agent's authority is consistent with fundamental agency principles as applied in most other jurisdictions. On rehearing, however, Celtic, along with *amicus curiae* Jackson National Life Insurance Company, complains that our decision cannot be reconciled with the specific language of articles 21.02 and 21.04 of the Texas Insurance Code. Because I believe the Court should have addressed these contentions, I write separately.

Article 21.02 provides in part as follows:

Any person who solicits insurance on behalf of any insurance company ... shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. *This article does not authorize an agent to orally, in writing, or otherwise alter, amend, modify, waive, or change a term or condition of an insurance policy or application for an insurance policy....*

Tex.Ins. Code art. 21.02 (emphasis added). Article 21.04 similarly provides as follows:

Any person who solicits an application for life, accident, or health insurance, or property or casualty insurance, shall, in

any controversy between the insured or the insured's beneficiary and the company issuing any policy upon such application or between the insured or the insured's dependents and that company, be regarded as the agent of the company, and not the agent of the insured, *but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy.*

Tex.Ins. Code art. 21.04 (emphasis added).

These provisions prevent a soliciting agent from contractually modifying the terms of a policy. Our decision does not conflict with this rule. We do not hold Celtic contractually liable because its agent modified the policy; rather, we hold Celtic vicariously liable under the Insurance Code and the Deceptive Trade Practices Act for its agent's tortious misrepresentation.

Jackson contends that this is a distinction without a difference. Imposing liability on Celtic for Harrell's misrepresentations, according to Jackson, is tantamount to allowing the agent to modify the policy. I disagree. Although in this case Coats recovered the expense of his son's treatment as if it had been covered under the policy, he was able to do so only because the jury found that Harrell's conduct was a producing cause of such damages. That finding is not before us for review, as Celtic does not challenge the measure of damages. But Coats *did not* obtain a policy covering psychiatric treatment in excess of $10,000, and Harrell's misrepresentations did not, standing alone, make Celtic liable for non-covered treatments during the policy period.[1]

Our holding is merely an extension of the Court's decision in *Royal Globe Ins. Co. v. Bar Consultants*, 577 S.W.2d 688, 693 (Tex. 1979). There, we recognized that article 21.02 does not authorize a soliciting agent to bind the insurer to terms contrary to those of

---

1. The extent of damages produced by a misrepresentation concerning the scope of coverage might depend on such factors as when the representation was made, whether the represented coverage was in fact available from other sources, the difference in value between the policy as represented and the policy as actually delivered, and whether the insured incurred expenses that otherwise would not have been incurred based on the representation.

the written policy,[2] but we nevertheless held that the insurer could not escape liability for its agents' misrepresentations that violate article 21.21 of the Texas Insurance Code or section 17.46 of the Deceptive Trade Practices Act.

---

**2.** The Court recognized this limitation even though at that time article 21.02 did not expressly so provide. The present language expressly limiting a soliciting agent's authority to alter or modify policy terms was added by the Legislature in 1985. *See* Acts 1985, 69th Leg., ch. 203, § 1, eff. May 24, 1985.