CONTINENTAL INSURANCE COMPANY et al., Appellants,

v.

Barbara Cope COLSTON et al., Appellees.

No. 17169.

Court of Civil Appeals of Texas, Fort Worth.

Jan. 29, 1971.

Rehearing Denied Feb. 26, 1971.

**462**

Thompson, Knight, Simmons & Bullion, and Timothy E. Kelley and David R. McAtee, Dallas, for appellants.

L. Royce Coleman, Jr., Denton, Edwards, Sowell & Padgett, Dallas, for appellees.

## OPINION

MASSEY, Chief Justice.

The question involved is whether, under the circumstances of a certain automobile collision, liability was imposed upon defendant insurance company under the contractual provisions of a policy; and whether the plaintiffs, in the prosecution of their suit, discharged the burden of proof requisite under their theory as to why such company was liable.

A judgment for plaintiffs was rendered against an insurance company upon answers returned to special issues. The company appealed.

Reversed. Judgment rendered.

Pertinent provisions of the insurance company's Garage Liability Policy read:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"G. bodily injury or

"H. property damage

to which this insurance applies, caused by an occurrence and arising out of *garage operations, including only the automobile hazard* for which insurance is afforded as indicated in the schedule. (Emphasis supplied.)

"* * *

"IV. PERSONS INSURED

"Each of the following is an insured under this insurance to the extent set forth below:

"Under the Garage Bodily Injury and Property Damage Liability Coverages:

"(1) the named insured; * * *

"(3) with respect to the automobile hazard:

"(a) Any person while using, with the permission of the named insured, *any automobile to which the insurance applies under the automobile hazard,* provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, * * *. (Emphasis supplied.)

"VII. ADDITIONAL DEFINITIONS

"When used in reference to this insurance (including endorsements forming a part of the policy):

" * * *

" 'automobile hazard' means that one of the following hazards for which insurance is afforded as indicated in the schedule:

"Automobile Hazard 1.

"(1) The ownership, maintenance or *use* (including loading and unloading) *of any automobile for the purpose of garage operations,* and (2) the *occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations,* and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person. (Emphasis supplied.)

"Automobile Hazard 2.

"The use *in connection with garage operations of any automobile* which is neither owned nor hired by the named insured, a partner therein or a member thereof, or a member of the same household as any such person.

" '*garage' means an automobile sales agency,* repair shop, service station, storage garage or public parking place;
" '*garage operations' means the ownership, maintenance or use of the premises for the purposes of a garage and all operations necessary or incidental thereto; * * *.*" (Emphasis supplied.)

The "garage operations" to which the policy had application was that of the Ken Moore Ford Sales, Inc., of Richardson, Texas, an automobile sales agency. This was the "named insured" on the policy.

The evidence was conflicting relative to whether the automobile in question was "in charge of" the named insured. All the evidence was to the effect that such automobile was owned by a used car dealer named Vernor. Mr. Ken Moore's testimony was to the effect that Vernor had driven the car to the premises where he had purchased "at wholesale" (not traded for) an automobile belonging to the former and had driven the newly purchased automobile away. If so, obviously he had not returned for the car in which he had driven to Moore's premises at the time it was being "used" on the material occasion.

Circumstances relative to the use of what is hereinafter called the Vernor car, which was the automobile subsequently involved in the collision with plaintiffs, were as follows: William Lee Thompson, an employee for a short period in the automobile motor repair section of Ken Moore Ford Sales, Inc., did not own any automobile. He began to use different automobiles off his employer's used-car lot to go home in the evenings. This practice was expanded. It expanded to such an extent that he would keep an automobile thus taken from the lot on the weekend. There was evidence that the authorities at the used-car lot—on at least one occasion prior to that material for our consideration—were aware when Thompson took an automobile from the used-car lot that he intended to use it on a weekend out-of-town trip.

On or about May 24, 1969, Thompson was driving the Vernor car on a weekend out-of-town trip. He had taken it from the Ken Moore Ford Sales used-car lot for that purpose. While passing through Denton County the Vernor car collided with the automobile of the plaintiffs. Such collision resulted in plaintiffs' personal injuries and in damages to their property.

■ At this point we make mention of the fact that by an answer of the jury it was found that Thompson had implied permission to make such trip by use of the automobile from Ken Moore Ford Sales, Inc. There was, in our opinion, evidence which raised the issue, and the jury finding was not contrary to the greater weight and preponderance of the evidence. This we hold despite the complete absence of

any evidence that Vernor had given Ken Moore Ford Sales, Inc. any authority to use his car for any purpose whatever at any time.

■ The other jury finding, there having been only two special issues submitted, was that the "use" being made by Thompson of the Vernor automobile, at the material time, was "garage operations" of Ken Moore Ford Sales, Inc., or incidental thereto. Our holding is that this finding was not supported by any evidence of probative force and effect. Therefore judgment rendered in the case must be reversed, with a take-nothing judgment rendered for the insurance company under its "no evidence" point of error relating to this issue.

Should it be determined that we err in the foregoing conclusion and holding, our holding is that the jury finding was not against the great weight and preponderance of the evidence.

In this case, as applied to any automobile, insurance contract provisions which covered it only during its "use in connection with garage operations", "use for the purpose of garage operations", etc., Ken Moore Ford Sales, Inc., did not contemplate the use of the automobile by its employees for purely personal purposes. Certainly such insurance policy does not cover similar use of an automobile which is a part of the employer's merchandise offered for sale to its customers whether or not there be consent for such a use.

Of course an automobile of a third person, such as the Vernor car, might be converted by one engaged in "garage operations" (operations of an automobile sales business) and used for its own business purposes. Such use in its own operations, however, could not extend to a sale or attempt to sell the automobile of a third person without his authorization. It would not be allowable to even consider some potential ratification of a sale of the third party's automobile, for any prospective ratification would necessarily constitute a mere possibility. Furthermore, as applied to Thompson's use of the Vernor car, there was no evidence that a sale of it was even contemplated by the Ken Moore Ford Sales, Inc. or by anyone on its used-car lot. Also, there was no evidence that anyone had made any character of use of the Vernor car between the time it was left on the lot and the time Thompson took it to make his out-of-town trip.

In Commercial Standard Insurance Company v. Sanders, 326 S.W.2d 298 (Waco Tex.Civ.App., 1959, writ dism.) the court construed the provisions of an insurance policy relative to the "use" of an automobile in the "automobile business". Such a "use", in our opinion, would be less restrictive than the "use" of an automobile for "purposes of the operations" of an "automobile sales agency", and/or "operations necessary or incidental thereto." Even as applied to the less restrictive provisions under consideration in the Sanders case the "use" under consideration (that of a salesman using the automobile to accelerate move from city where he lived to that of his new employer) was held to lie outside the "automobile business". In addition to the authorities cited by the Waco Court of Civil Appeals, see also cases annotated in 43A Words & Phrases (Permanent Edition) under "Used in the Automobile Business" at page 343, and also other cases following "Use; Used", beginning at page 248.

■ We have been unable to find any authorities which bear upon insurance coverage afforded in connection with the "use" of an automobile pursuant to "operations" of a service business or sales business. However, we are convinced that where the coverage of the policy is thus specified, the use of an automobile for purely personal purposes could not be within contemplation of an insurance policy on garage liability as "operations of or incidental to" such a business.

As applied to the circumstances of the case before the court we are convinced

that Thompson's use of the Vernor car on the occasion in question was purely personal, not even incidental to or of any possible benefit to Ken Moore Ford Sales, Inc., the "named insured". In particular we are convinced that his use of the Vernor car was not shown to have been "operations" of the business of his employer or "operations incidental thereto". The jury's answer to the special issue is therefore legally resolved contradictory to the finding returned. There is no evidence supporting the finding made by the jury. In so holding we have considered pertinent undisputed evidence.

All of the points of error, other than the "no evidence" point upon which we reverse, have been examined and severally considered, and, under the record, are overruled.

Judgment reversed and rendered.