**FARMER ENTERPRISES, INC. a/k/a F & J Truck Sales, Dan Farmer and Phyllis Stephenson, Individually and as Next Friend of Jerod Lee Farmer, Appellants,**

v.

**GULF STATES INSURANCE COMPANY, Appellee.**

No. 05–95–00047–CV.

Court of Appeals of Texas, Dallas.

July 26, 1996.

---

Frank L. Broyles, David L. Paschall, Goins Underkofler Crawford & Langdon, L.L.P., Dallas, for Appellants.

E. Thomas Bishop, E. Thomas Bishop, P.C., Dallas, for Appellee.

Before MORRIS, WHITTINGTON and JAMES, JJ.

## OPINION

MORRIS, Justice.

This is an appeal from a summary judgment rendered in a declaratory judgment action brought by Gulf States Insurance Company. In four points of error, Farmer Enterprises, Inc., a/k/a F & J Truck Sales, Dan Farmer and Phyllis Stephenson, individually and as next friend of Jerod Lee Farmer, challenge the final judgment the trial court granted to Gulf States and claim other errors as well. The central question presented is whether a garage operations insurance policy provides coverage for an accident involving the teenaged son of the owner of the insured company while driving a company owned car home from school. We construe the policy to provide coverage if the teenaged son had been listed on an endorsement to the policy. Because he was not listed, we must decide whether the summary judgment evidence resolves the question of whether he should have been listed on the policy by the insured's insurance agent. More specifically, we must decide whether the summary judgment evidence resolves the question of the agent's authority to bind Gulf States. We conclude the summary judgment evidence does not resolve the question of the agent's authority and, therefore, Gulf States has not shown itself entitled to summary judgment. We accordingly reverse the trial court's judgment.

## FACTUAL BACKGROUND

In December 1992, Jerod Lee Farmer, the sixteen-year old son of Dan Farmer and Phyllis Stephenson, had an automobile accident while driving home from school. Farmer Enterprises, Inc., a wholesale automobile business run by Dan Farmer, owned the car

driven by Jerod. Three passengers in the car, Jerod's classmates, were injured in the accident. They sued Jerod and his parents.

At the time of the accident, Farmer Enterprises had in force a garage operations insurance policy. Gulf States issued the policy early in 1992 through the Meredith Bolger Insurance Agency, operated by Meredith Bolger. Farmer Enterprises, as owner of the insurance policy, submitted a claim to Gulf States based on Jerod's accident and requested a defense of the suit filed by the three passengers. Gulf States sent a reservation of rights letter, stating that no coverage was afforded under the policy because the passengers' alleged injuries did not "arise out of 'garage operations' " and because Jerod was not listed as an authorized driver under the policy. Gulf States then filed suit, seeking a declaratory judgment that the garage operations insurance policy did not cover Jerod's accident. In their response, appellants asserted affirmative defenses and counterclaimed for breach of contract, violations of the Texas Deceptive Trade Practices–Consumer Protection Act, a declaratory judgment, and attorney's fees.

Gulf States moved for summary judgment, seeking a declaration that it had no duty under the policy to defend the suit brought against Jerod and his parents. The grounds asserted to support the motion were the same as those stated in Gulf States' reservation of rights letter. Appellants too moved for summary judgment on one of their affirmative defenses, which asserted the policy to be illegal because it allegedly violated the Texas Safety Responsibility Law. Appellants also filed a motion for leave to join several third-parties as defendants.

In appellants' summary judgment evidence, Dan Farmer claimed Bolger represented to him that the garage operations insurance policy would cover all members of his family, including his son Jerod when he turned sixteen. Farmer stated Bolger further represented to him that he would not need to pay an additional premium for Jerod to be covered. Farmer said he notified an employee at the Bolger Agency when Jerod turned sixteen. He also claimed the Bolger

Agency issued an insurance card with Jerod's name on it, but the card had been lost.

In Gulf States' summary judgment evidence, Bolger denied telling Dan Farmer that Jerod would be covered by the policy in the absence of an additional premium. Bolger also denied that Farmer notified him when Jerod turned sixteen and said that, to the best of his knowledge, no one else at the agency was notified. Bolger said that to his knowledge no one at the agency issued an insurance card for Jerod.

After a hearing, the trial court granted Gulf States' motion for summary judgment on the stated basis that the policy "provides no coverage for the motor vehicle collision made the basis of [the three passengers' suit]." The trial court also granted Gulf States' summary judgment on appellants' counterclaims and denied appellants' motion for summary judgment on the affirmative defense of illegality. Later, the trial court ordered appellants to pay Gulf States' attorney's fees. In its judgment, the trial court denied all requested relief not expressly granted, thereby denying appellants' motion for leave to join third-parties. This appeal ensued.

## DISCUSSION

In their first point of error, appellants contend the trial court erred in granting Gulf States' motion for summary judgment for three reasons: (1) the policy provided coverage for any person using an insured automobile with the insured's permission regardless of whether garage operations were involved; (2) fact issues existed concerning whether Jerod was an authorized driver and whether Bolger and the Bolger Agency had authority to bind Gulf States; and (3) Gulf States' motion for summary judgment failed to address all of appellants' asserted counterclaims. Alternatively, appellants argue the policy is ambiguous.

■ In reviewing a trial court's summary judgment, we apply well known standards. *See Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). The trial court based its summary judgment solely on the ground that the policy provided no

coverage for Jerod's accident. Therefore, we review the summary judgment to see whether it was proper for the trial court to grant the motion on that ground. *State Farm Fire & Cas. Co. v. S. S.*, 858 S.W.2d 374, 380 (Tex.1993).

■ An insurance policy is a contract. Therefore, we construe it by applying rules of interpretation and construction generally applicable to contracts. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). When construing a written contract, our primary focus is to ascertain the true intent of the parties as expressed in the written document. *Id.* A written contract that can be given a definite or certain legal meaning is not ambiguous. *Id.* If the policy contains no ambiguity, the words used in the policy are to be given their ordinary meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984).

■ If, however, the language of the policy is subject to two or more reasonable interpretations, the policy is ambiguous.

*National Union*, 907 S.W.2d at 520. Whether a contract is ambiguous is a question of law for the court to determine. *Id.* A court should consider an insurance policy as a whole, giving effect to each part of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). No single phrase, sentence, or section of a policy should be isolated and considered apart from the other provisions of the policy. *Id.* at 134.

Given these standards, we address separately appellants' arguments presented in their first point of error. Normally, we would address first appellants' claim that the policy is ambiguous. Because appellants assert ambiguity alternatively, however, we reserve our discussion of that issue until after we have examined the parties' principal arguments under appellants' first point of error.

### Garage Operations Requirement

■ The policy's language is the focus of the parties' dispute. The policy sets forth included coverage and insured hazards as follows:

### GARAGE INSURANCE SCHEDULE

The insurance afforded is only with respect to such of the following coverage and hazards . . .

| Coverage | Hazards |
| --- | --- |
| G—Bodily Injury Liability | Garage operations including Automobile Hazard 1 Automobile Hazard 2 |
| H—Property Damage Liability | Garage operations including Automobile Hazard 1 Automobile Hazard 2 |

In a paragraph describing "Additional Definitions," the policy defines "Automobile Hazard 1" as follows:

(1) the ownership, maintenance or use (including loading or unloading) of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and for the use of non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person.

Section (3) of this definition is at the center of appellants' argument that coverage exists.

The policy further provides:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

G. bodily injury or H. property damage

to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the schedule. . . .

As contrasted to appellants' argument, Gulf States urges, as we describe later, that the last clause of this part of the policy, beginning with the word "including," is pivotal to the proper construction of the policy.

Lastly, under a paragraph titled "PERSONS INSURED," the policy states:

Each of the following is an insured under this insurance to the extent set forth below:

A. Under the Garage Bodily Injury and Property Damage Liability Coverage:

(3) With respect to the automobile hazard:

(a) any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. . . .

Appellants contend two undisputed facts give rise to coverage under the "Automobile Hazard 1" section of the policy: first, the automobile driven by Jerod was owned by Farmer Enterprises, the named insured under the policy; and, second, at the time of the accident Jerod was using the automobile for his personal use with the express permission of Farmer Enterprises. Appellants argue that the definition of "Automobile Hazard 1" in the policy, in particular section (3) of the definition, provides broad coverage for an automobile owned by the insured and driven by a non-owner with the insured's permission, regardless of whether the automobile is used in connection with actual garage operations.

Gulf States contends the undisputed facts relied on by appellants do not give rise to coverage because the automobile was not being used in connection with garage operations. Gulf States argues the policy restricts coverage to bodily injury caused by an occurrence arising only out of garage operations. According to Gulf States, "Automobile Hazard 1" simply defines the scope of coverage in cases specifically involving automobiles and does not negate the threshold requirement that the injury arise out of garage operations.

Recognizing that no Texas case on point exists, appellants rely on *Indiana Lumbermen's Mutual Insurance Co. v. Hartford Accident and Indemnity Co.*, 454 S.W.2d 781 (Tex.Civ.App.—Waco 1970, writ ref'd n.r.e.). Although *Indiana Lumbermen's* involved coverage under a garage liability policy, the policy there did not contain the "Automobile Hazard 1" language at issue here. Further, the parties in that case did not argue, and the court did not discuss, whether a garage operations requirement cloaked the policy. Rather, the case involved the question of whether the driver of the car had implied permission from the person to whom the named insured furnished the car. Appellants argue the significance of *Indiana Lumbermen's* is that the court determined, and the parties agreed, that the garage liability insurer would have been liable under its garage operations policy had the evidence shown the automobile was driven with the permission of a person who had been furnished the car for her regular use.

Gulf States argues, and we agree, that *Indiana Lumbermen's* is inapplicable because the court did not address the issue of whether the accident arose out of garage operations and because the policy did not contain language similar to the "Automobile Hazard 1" language in the Gulf States' policy. Gulf States instead maintains that *Continental Insurance Co. v. Colston*, 463 S.W.2d 461 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.), controls here. In *Colston*, an employee of an automobile dealership was involved in an accident while driving an automobile taken from his employer's dealership. The automobile was not owned by the dealership; rather, it had been left on the lot by a customer who had purchased another car from the dealership. The employee used the automobile for his personal use. The dealership was covered by a garage liability policy with provisions very similar to the policy provisions in this case, including the definition of "Automobile Hazard 1" and the provision that the insurer would pay bodily injury damages "caused by an occurrence and arising out of garage operations." The dealership sued the insurer claiming the policy covered the accident. After a jury trial, the court signed a judgment on the verdict

awarding the dealership damages pursuant to the policy. *Id.* at 462.

The insurance company in *Colston* argued on appeal that there was no evidence the employee was engaged in "garage operations" at the time of the accident, and therefore no coverage was afforded under the policy. The appeals court determined that the use of the vehicle for purely personal purposes could not be covered by the garage liability policy as "operations" or "incidental to" the business. *Id.* at 464. The court held that the injury was not covered by the policy and therefore reversed and rendered judgment in favor of the insurer. *Id.* at 465.

Like *Indiana Lumbermen's,* we find *Colston* distinguishable from the instant case. In *Colston,* the automobile was not owned by the named insured. The court considered coverage under sections (1) and (2) of the definition of "Automobile Hazard 1," not section (3) on which appellants rely in this case. Sections (1) and (2) of the definition set forth above provide coverage for automobiles not owned by the named insured but used in connection with garage operations. The two sections specifically require that the automobile involved in the accident be used either "for the purpose of garage operations" or "principally in garage operations." Section (3), however, covers automobiles owned by the named insured, but does not contain an express reference to a garage operations requirement like that found in section (1) or (2). Section (3) in the definition of "Automobile Hazard 1" appears on its face to provide broad coverage for any automobile owned by the named insured that is being used by any person with the named insured's permission without reference to a garage operations requirement.

Gulf States argues that the garage operations requirement in the "insuring clause" of the policy cloaks the entire policy with that requirement. According to Gulf States, an express garage operations requirement is not needed in section (3) of the definition of "Automobile Hazard 1" because one is implied. In the "insuring clause," which is set forth more fully above, the policy states "[t]he company will pay on behalf of the insured all sums ... to which this insurance applies, caused by an occurrence and arising out of garage operations, including only the automobile hazard for which insurance is afforded as indicated in the schedule...." Gulf States argues the term "including" narrows the scope of coverage in cases involving automobiles and is intended to afford coverage for the use of "loaner" vehicles.

Appellants, on the other hand, argue the term "including" is employed generally as a term of enlargement and not a term of limitation or enumeration, citing *Peerless Carbon Black Co. v. Sheppard,* 113 S.W.2d 996, 997 (Tex.Civ.App.—Austin 1938, writ ref'd), and *El Paso Electric Co. v. Safeway Stores, Inc.,* 257 S.W.2d 502, 506 (Tex.Civ.App.—El Paso 1953, writ ref'd n.r.e.). According to appellants, "Automobile Hazard 1" should be viewed as coverage in addition to occurrences arising out of garage operations. Alternatively, appellants argue that even if the policy covers only accidents arising out of garage operations, then the policy includes within the phrase "arising out of garage operations" the use by family members of an automobile owned by the named insured. Regardless of whether the policy covers "loaner" vehicles as Gulf States contends, we agree with appellants' alternative argument.

Although we recognize the policy is a garage operations policy intended to cover incidents arising from garage operations, we do not read section (3) of the definition of "Automobile Hazard 1" as restrictively as Gulf States suggests. We conclude the term "including" is used as an explanation for occurrences arising from garage operations. The term is definitional and used in a manner that broadens the ordinary meaning of the term "garage operations." *See Republic Ins. Co. v. Silverton Elevators, Inc.,* 493 S.W.2d 748, 752 (Tex.1973). The policy precludes dispute over whether an event fitting into section (3) of the definition arose from garage operations; the parties defined it as such in the policy.[1] By definition, the three

---

1. The language under the "Persons Insured" portion of the policy further supports our reading of the policy. "Persons Insured" is broken into three subparts. The second subpart deals with garage operations "other than the automobile hazard." The language suggests that, by defini-

situations described as "Automobile Hazard 1" *are* occurrences arising out of garage operations.

Although we have concluded that section (3) broadens the ordinary meaning of garage operations, we must still consider section (3) as part of the entire policy. Section (3) read alone appears to provide broad coverage to any person driving a car owned by the named insured with the permission of the named insured. But there is another provision in the policy to consider. That provision is an endorsement containing the following language:

I. **FURNISHED AUTOMOBILES EXCLUSION:** It is hereby agreed and understood that Bodily Injury and Property Damage coverage for those Automobiles named by the Named Insured and furnished for the regular use of Owners, Partners, Executive Officers, Employees, spouses, children or relatives of the foregoing; or any other person or organization is limited to the following schedule of persons or organizations and the drivers listed below ...

### SCHEDULE OF FURNISHED AUTOMOBILES

| Automobile Furnished To | No. Of Units | Title Or Position | Other Drivers of Furnished Automobiles | Premium Charge |
|---|---|---|---|---|
| Terry Smith | 1 | Owner | | |
| Daniel Farmer | 1 | Owner | | |
| Sandra Smith | 1 | Non-Active | | |
| Kim Smith | 1 | Non-Active | | |
| Phyllis Forrest [Farmer] | 1 | Non-Active | | |
| Teresa Forrest [Farmer] | 1 | Non-Active | | |

The Schedule of Furnished Automobiles lists those persons who will be covered when driving a car owned by the named insured and provided for their "regular use." Therefore, we conclude the policy's endorsement limits the application of section (3) of the definition of "Automobile Hazard 1." It does so by specifically naming in the schedule those persons who will be covered while driving a car owned by the named insured and furnished to them for their regular use. It is undisputed that Jerod was not listed on the endorsement.

### Agency

■ In response to the undisputed fact that Jerod is not identified on the Schedule of Furnished Automobiles, appellants contend the policy should cover Jerod because Jerod should have been listed on the policy as an authorized driver. Appellants argue the summary judgment evidence raises fact issues with respect to whether: (1) Bolger represented to Dan Farmer that Jerod would be added automatically to the policy when he turned sixteen; (2) Farmer requested the Bolger Agency to add Jerod to the policy; (3) the Bolger Agency issued an insurance card with Jerod's name on it; and (4) Bolger had actual or apparent authority to bind Gulf States.

Following the Schedule of Furnished Automobiles, which is set forth above, the policy provides:

A) Coverage is automatically extended to additional furnished automobiles and/or drivers that arise during the policy period as long as the Named Insured notifies the Company within 30 days following the actual change and proper premium is charged therefor.

In addition to the undisputed fact that Jerod's name was not on the policy as an authorized driver, it is also undisputed that an additional premium was never paid to add Jerod to the policy. Nonetheless, appellants argue that Jerod should be covered because Bolger represented to Dan Farmer that Jerod would automatically be added to the policy

tion, "automobile hazard" is included in "garage operations" and therefore must be specifically excluded in subpart two.

without an additional premium when he turned sixteen and because Farmer's notice to Bolger that he wanted to add Jerod to the policy constituted notice to Gulf States.

 Because Gulf States moved for summary judgment, it had the burden to negate, as a matter of law, appellants' claim that Bolger had the authority, either actual or apparent, to bind Gulf States. *Wilcox v. St. Mary's Univ.*, 531 S.W.2d 589, 592–93 (Tex.1975). In determining whether Gulf States met its burden, we take all facts, evidence, and inferences in appellants' favor, and any uncertainty or ambiguity is resolved in their favor. *Nixon*, 690 S.W.2d at 548–49.

 A corporation, being a legal fiction, can act only through its agents. *Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 821 (Tex.App.—Corpus Christi 1988, no writ). Notice to an agent, received while the agent is acting within the scope of his authority, constitutes notice to the principal. *See University State Bank v. Gifford–Hill Concrete Corp.*, 431 S.W.2d 561, 570 (Tex.Civ. App.—Fort Worth 1968, writ ref'd n.r.e.). Further, an insurance company generally is liable for any act of an agent that is made within the actual or apparent scope of the agent's authority. *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 98–99 (Tex.1994). In determining a principal's vicarious liability, the test is whether the agent was acting within the scope of the agency relationship, not whether the principal authorized the specific act. *Id.* at 99. To determine whether Bolger's actions could bind Gulf States, we must determine whether Bolger was acting within the scope of his authority as Gulf States' agent.

 The scope of Bolger's authority as Gulf States' agent first depends on whether Bolger was acting under actual or apparent authority. The Texas Insurance Code provides for two categories of insurance agents: local recording agents and soliciting agents.[2] TEX.INS.CODE ANN. art. 21.14 (Vernon Supp.1996). Although both solicit insurance, a local recording agent's authority is much broader than the authority of a soliciting agent. A local recording agent has the authority to sign and execute policies. The insurance code vests local recording agents with authority to write insurance policies coextensive with that of the insurance company, removing all dispute over questions of the local recording agent's actual or apparent authority. *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 692 (Tex. 1979). The authority of soliciting agents, on the other hand, is limited to soliciting business for the insurer. *Id.* at 693. A soliciting agent has no actual authority to bind the insurer. *Id.; Guthrie v. Republic Nat'l Life Ins. Co.*, 682 S.W.2d 634, 636–37 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Appellants contend Bolger was a local recording agent for Gulf States because he had a local recording agent's license. Consequently, appellants argue Bolger's representations that Jerod would be added automatically to the policy without an additional premium when he turned sixteen, coupled with Dan Farmer's notice to Bolger to add Jerod to the policy, bound Gulf States to cover Jerod. Gulf States counters that even though Bolger had a local recording agent's license, he did not act as a local recording agent for Gulf States. Therefore, Gulf States contends it is not liable for Bolger's alleged misrepresentations nor was the company on notice to add Jerod to the policy when and if Farmer asked Bolger to do so.

It is undisputed that Bolger had a local recording agent's license. The question, however, is whether the summary judgment evidence conclusively negates that Bolger acted as a local recording agent on behalf of Gulf States. *See Wilcox*, 531 S.W.2d at 592– 93. The only summary judgment evidence relating to Bolger's actions on behalf of Gulf States comes from Bolger himself. Bolger testified he had no authority to bind Gulf States; he did not write, sign, or execute insurance policies for Gulf States; and he had no contract or agreement with Gulf States. He stated he had only an oral agree-

---

**2.** We recognize that in the area of life, health, and accident insurance, the Texas Insurance Code makes no distinction between local recording agents and soliciting agents. *See Celtic Life,* 885 S.W.2d at 98. The code's distinction, however, applies to the garage operations policy in this case.

ment with another agency, the Gramercy Agency. He indicated the Gramercy Agency was the managing general agent for Gulf States.

Other summary judgment evidence shows that Scarlett Lieck, an adjuster for Texas General Agency, testified that only the managing general agent for Gulf States had authority to bind the insurance company. Lieck said Gulf States deals through managing general agents, not with individuals insured under their policies. She said all requests from policy holders "flow from the agent to the managing general agent." According to Lieck, however, the Armor Agency, not the Gramercy Agency, was the managing general agent for Gulf States.

There is a conflict in the summary judgment evidence about what agency was the managing general agency for Gulf States. Although Bolger testified about his relationship to the Gramercy Agency, there is no summary judgment evidence about his relationship, if any, with the Armor Agency. Even if we assume Bolger was not acting in his capacity as a recording agent through the Gramercy Agency, we have no basis in the summary judgment record to conclude he was not so acting through the Armor Agency, which Leick testified was the general managing agent for Gulf States.

Moreover, Bolger's testimony that he did not have authority to bind Gulf States is merely an opinion or a conclusion. The scope of an agent's authority in a summary judgment proceeding cannot be established conclusively by the agent's testimony alone. *See Gallop v. Seagoville Inv., Inc.,* 417 S.W.2d 727, 729 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). Also, Bolger's testimony that he did not write policies for Gulf States or have an agreement with Gulf States begs the question. Lieck stated that "[n]ormally, the managing general agency has full underwriting authority, rating authority, and claims handling authority." Thus, the question unanswered by the summary judgment evidence is what authority Bolger had with respect to Gulf States' managing general

agent, which did have the authority to bind Gulf States. Gulf States did not conclusively negate appellants' claims that Bolger was acting as a local recording agent on behalf of Gulf States. Viewing the evidence in the light most favorable to the non-movant, we conclude that Gulf States' summary judgment proof failed to resolve conclusively the issue of Bolger's authority to bind Gulf States.[3]

### Farmer's Counterclaims

In their first point of error, appellants also argue that the trial court's summary judgment should be reversed and remanded because Gulf States' motion for summary judgment failed to address all of appellants' counterclaims and failed to negate an essential element of each claim. We disagree with the first contention but agree with the second.

In their first amended counterclaim, appellants asserted a number of affirmative claims. Gulf States' supplemental motion for summary judgment stated, "Gulf States submits this Supplement to its Motion for Summary Judgment to make clear that Gulf States is moving for summary judgment not only on its declaratory judgment action, but also as to the Farmer Defendants' counterclaim." In its prayer, Gulf States requested a judgment declaring that it owed no duty to defend appellants and that they take nothing on their counterclaims. Contrary to appellants' first contention, Gulf States addressed appellants' counterclaims in its motion and requested a take-nothing judgment against those claims.

However, in addition to urging that Gulf States did not address their counterclaims, appellants also argue in their brief that Gulf States failed to "negate an element of each of those claims." In support of its supplemental motion for summary judgment, Gulf States alleged it was entitled to summary judgment on appellants' counterclaims because the injuries claimed by the three passengers did not arise out of garage opera-

---

**3.** Because of our conclusion, we do not reach appellants' argument that Bolger acted with ap- parent authority to bind Gulf States.

tions, and therefore appellants sustained no damages as a result of Gulf States' alleged breach of contract. Gulf States also alleged that the Bolger Agency had no binding authority to act for it, and therefore Gulf States was not responsible for any misrepresentation made by Bolger. For the same reasons, Gulf States claimed in its motion it was entitled to summary judgment on the remainder of appellants' counterclaims.

Because we have concluded the policy *could* have provided coverage and, further, because we have concluded that a fact issue remains with respect to whether the Bolger Agency had the requisite authority to bind Gulf States, we also conclude Gulf States did not meet its burden to negate an element of each of appellants' counterclaims. Simply stated, because Gulf States relied on its arguments that the policy did not cover the accident and Bolger had no authority to bind it, Gulf States did not attempt to negate any element of any of appellants' counterclaims.

### Ambiguity

 Appellants alternatively argue in their first point of error that the policy is ambiguous, relying on *Grain Dealers Mutual Insurance Co. v. McKee,* 911 S.W.2d 775 (Tex.App.—San Antonio 1995, writ requested). In *Grain Dealers,* the court considered whether a business automobile policy covered an accident involving the daughter of the owner of the insured corporation. The daughter, on a purely personal outing, was driving a car not covered by the policy. The policy listed the corporation as the "named insured," but an endorsement included as insureds "you or any family member." The court held that the family-oriented language in the business automobile policy created an ambiguity. Consequently, the court found in favor of coverage. *Id.* at 781–82.

Appellants argue that, likewise, the family-oriented language in the endorsement to the garage liability policy creates an ambiguity in this case. There is a factual distinction, however, between *Grain Dealers* and the present case. In *Grain Dealers,* the named insured was the corporation. The policy defined "you" and "your" as the named insured. The endorsement provided that the named insured was "you or any family member." The court reasoned that a corporation cannot have family members; hence, the family-oriented language in the policy created an ambiguity. *Id.* at 781. After finding an ambiguity, the court found in favor of coverage, noting that the context of the entire policy made it reasonable for the sole shareholder to think the policy would cover his entire family. *Id.*

Here, the policy lists the named insured as "F & J Truck Sales," the assumed name of Farmer Enterprises, Inc. Under "Persons Insured," the policy provides:

(3) with respect to the automobile hazard:

(a) any person while using, with the permission of the named insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or ... his other actual use thereof is within the scope of such permission....

The endorsement, entitled "Furnished Automobile Exclusion," specifically covers "automobiles owned by the named insured and furnished for the regular use of owners, partners, executive officers, employees, spouses, children or relatives of the foregoing; or any other person or organization is limited to the following scheduled persons or organizations and the drivers listed below...." The policy then specifically lists in the Schedule of Furnished Automobiles six persons covered by the policy.

Although the named insured is a corporation and the endorsement refers to "spouses, children or relatives" of the named insured, we find a distinction between this case and *Grain Dealers.* Here, the endorsement goes on to limit the persons covered to the specific names listed. Any ambiguity that may exist in referring to spouses, children, and relatives of the corporation becomes immaterial when coverage is limited to the specific persons listed on the schedule. We conclude the policy is not ambiguous and provides coverage by virtue of the definition of "Automobile Hazard I" to the persons listed on the schedule.

**114**

Based on the foregoing, we sustain appellants' first point of error. We next address appellants' remaining three points of error.

In their second point of error, appellants argue that the trial court erred in denying their cross-motion for summary judgment, which if granted would have been interlocutory. In their motion, appellants argued that the insurance contract represented by the policy was illegal because it violated the Texas Safety Responsibility Law if it did not afford coverage to Jerod. Even if we were to sustain this point of error, we would grant no further relief than that given by our disposition of the first point of error. Therefore, we need not reach this point of error. We dismiss it.

Appellants, in their third point of error, contend the trial court erred in awarding Gulf States its attorney's fees. Because of our disposition of appellants' first point of error, we agree. We sustain appellants' third point of error.

In their fourth and last point of error, appellants complain that the trial court erred in denying their motion for leave to join third-party defendants. Appellants generally contend the trial court erred in denying their motion for leave to join third-party defendants because it erred in granting the motion for summary judgment. We have concluded the trial court erred in granting Gulf States' summary judgment, and we accordingly will remand the case to the trial court. Our decision makes appellants' fourth point of error moot because, upon remand of the case, the trial court's denial of the motion to join other parties will be an interlocutory order. On remand, nothing prevents Farmer from refiling its motion or asking for the trial court's reconsideration of its ruling. We accordingly dismiss appellants' fourth point of error.

We reverse the trial court's summary judgment. We remand the case to the trial court for further proceedings.