**Reversed and Remanded in Part and Affirmed in Part. Opinion Filed June 18, 2013.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-01478-CV

**BANK OF TEXAS, N.A., Appellant**
**V.**
**CLINT M. GLENNY, II, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-14408**

## OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Moseley

This is an appeal from an order granting summary judgment in a multi-party lawsuit. After foreclosing on real estate securing a promissory note, Bank of Texas, N.A. (Bank) sued the borrower, Cindy Lantrip to recover remaining amounts due. Later, the Bank sued Clint M. Glenny, II, an attorney, for negligent misrepresentation about Lantrip's finances contained in two letters prepared in connection with the promissory note. Glenny filed a no-evidence and traditional motion for summary judgment asserting (1) no evidence he made any misrepresentations; (2) no evidence of independent injury under the economic loss rule; (3) the summary judgment evidence proved the letters were not signed in the course and scope of employment; and (4) the Bank did not justifiably rely on the letters as a matter of law. The trial court granted summary judgment in favor of Glenny and later rendered a final judgment

disposing of the other issues and parties in the case. The Bank appeals, arguing in two issues that the trial court erred by granting Glenny's no-evidence and traditional motions for summary judgment.

We conclude there are genuine issues of material fact and that the trial court erred by granting summary judgment. Accordingly, we reverse the trial court's judgment in favor of Glenny and remand that portion of the case to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

## BACKGROUND

According to the pleadings, in 2008 Lantrip obtained a $1.9 million loan, secured by a deed of trust, from the Bank to build a house in Dallas. Lantrip contracted with Kevin Wiley to build the house. Kevin Wiley was Glenny's client and Kevin's sister, Kim Wiley, worked for Glenny as a paralegal. Metropolitan Mortgage, a mortgage brokerage owned by Ted "Chip" Ferrier III, worked with Lantrip and Kevin Wiley on the loan. Jennifer Normile, a Bank officer at the time, received the loan application and approved the loan.

As part of the loan application, Lantrip submitted documents verifying her income and assets. One of those documents was a verification of deposit by Dallas lawyer William Ravkind. This document, addressed to Bright Mortgage, purported to verify two trust accounts totaling approximately $1.2 million owned by Lantrip and deposited with Ravkind.[1] The Bank alleged this information was false and that Ravkind did not hold any trust accounts for Lantrip.

In addition, the Bank received two letters (the "Letters") about Lantrip purportedly signed by Glenny. The Letters were on Glenny's letterhead, addressed "To Whom it May

---

[1] A summary judgment in favor of Ravkind was affirmed by this Court in a separate appeal. *See Bank of Tex. v. Ravkind*, No. 05-11-01123-CV, 2013 WL 1281860, at *4 (Tex. App.—Dallas March 12, 2013, no pet.) (mem. op.).

Concern," and faxed to Kevin Wiley and to Ferrier's office. The Letters stated that the Glenny Law Firm had been asked to verify Lantrip's employment and to advise of the status of her trust accounts. One letter stated that Lantrip had been self-employed for more than two years, her business operated as a legal entity, she did not need a license to operate her business, and the move to Dallas would not negatively impact her business. The other letter stated Lantrip had full access to both trust accounts and no limit on the amount that could be withdrawn. In its lawsuit the Bank alleged this information was false because Lantrip did not have a business and the trust accounts did not exist.

There is conflicting evidence in the record as to how the Letters were prepared. In his deposition, Glenny denied personally signing the Letters or knowing about them before they were sent out. Glenny testified the Letters were prepared by his office at the request of his client, Kevin Wiley. Glenny thought one of his paralegals, Yolanda Dominguez, prepared the Letters and signed his name to them. The record contains an affidavit purportedly signed by Dominguez to this effect. However, in Dominguez's deposition, she testified she did not prepare the Letters or sign them. She also denied signing the affidavit, claiming it was a forgery prepared by Kim Wiley. Kim Wiley testified in her deposition that Dominguez did sign the affidavit; that Dominguez initially prepared the Letters; and that she (Kim) edited the Letters and then signed Glenny's name to them.

## ANALYSIS

### A. Standard of Review

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We apply the well-established standards for reviewing summary judgments. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310–11 (Tex. 2009) (no-evidence summary judgment standards of review); *Nixon v.*

–3–

*Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standards of review).

A no-evidence motion for summary judgment under rule 166a(i) must challenge specific elements of the opponent's claim or defense on which the opponent will have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The opponent must then present summary judgment evidence raising a genuine issue of material fact to support the challenged elements. *Id.* In reviewing a no-evidence summary judgment motion, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). A genuine issue of material fact exists if the non-movant produces more than a scintilla of evidence supporting the existence of the challenged element. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

A motion for summary judgment on traditional grounds must show there is no genuine issue as to a specified material fact and that, therefore, the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Thus, for a defendant to prevail on a traditional motion for summary judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or conclusively establish all elements of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex. App.—Dallas 2007, pet. denied). If the movant meets its burden, then and only then must the non-movant party respond and present evidence

raising a fact issue as to the material facts in question. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999).

### B. No-evidence Motion

The elements of a negligent misrepresentation cause of action are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Bever Props., L.L.C. v. Jerry Huffman Custom Builder, L.L.C.*, 355 S.W.3d 878, 892 (Tex. App.—Dallas 2011, no pet.).

Glenny's no-evidence motion for summary judgment asserted: (1) the Bank had no evidence that he made any representation to the Bank about Lantrip; (2) the Bank had no evidence that Kim Wiley signed the Letters within the scope of her employment; and (3) under the economic loss rule, the Bank was required to show an injury independent of the contractual loan to Lantrip.

The Bank's first issue argues the trial court erred by granting Glenny's no-evidence motion for summary judgment because the Bank presented more than a scintilla of evidence that Glenny made the misrepresentations and his employees acted within the scope of their employment and the economic loss rule does not apply to this claim for negligent misrepresentation.[2]

---

[2] The Bank also asserts that Glenny did not file a verified denial of the execution of the letters by his authority and thus the Bank did not have the burden to prove authority. *See* TEX. R. CIV. P. 93(7). Both the Bank and Glenny filed amended pleadings after the summary judgment hearing and before the trial court granted the motion.

### 1. Representation and Scope of Employment

We discuss the representation and scope of employment arguments together. Glenny argued in his no-evidence motion the Bank had no evidence that Glenny made any representation in the course of his business.[3] He also argued the Bank had no evidence that it was within Kim Wiley's general authority to sign his name to documents without his authority and consent.[4]

Generally, an employer is vicariously liable for the torts of his employees committed in the course and scope of their employment. *See GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999). The test is whether the employee was acting within the scope of employment, not whether the employer authorized the specific act. *See Farmer Enters., Inc. v. Gulf States Ins. Co.*, 940 S.W.2d 103, 111 (Tex. App.—Dallas 1996, no writ). An employer is liable "when the tortious act falls within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002); *see also G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex. App.—Dallas 2003, no pet.) (employer liable for act of employee, even if act contrary to express orders, if done within general authority of employee). The employee's acts must be of the same general nature as the conduct authorized or incidental to authorized conduct to be within the scope of employment. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007).

---

Glenny's amended answer contained a sworn denial of the execution of the letters. Because of our disposition of the other subparts of the Bank's first issue, we need not address the subpart about the lack of a verified denial. *See* TEX. R. APP. P. 47.1.

[3] Under the no-evidence summary judgment heading, the motion stated, "Plaintiff has no evidence that Mr. Glenny made any representation to them or to anyone with relationship to the Colgate loan or property. The documents Plaintiff relies upon are forgeries that were created without Mr. Glenny's knowledge or consent. As such, Plaintiff has no evidence of any representation made to them by Mr. Glenny. . . . In this case, Plaintiff has no evidence that Defendant Glenny made any representation in the course of his business."

[4] The motion stated, "Plaintiff has no evidence that it was within Ms. Wiley's general authority as an employee of Mr. Glenny to sign his name to documents without his authority and consent."

The Letters themselves give some indication they were prepared by Glenny's firm in the course of its business. The Letters were on Glenny's firm letterhead and his name was signed above his typed name. The Letters were addressed "To Whom It May Concern," and stated Glenny's firm had been requested to verify aspects of Lantrip's employment and to advise of the status of Lantrip's trust accounts.

As the Bank pointed out in its response to the motion, Glenny testified in his deposition that the Letters were prepared by his office pursuant to the instructions of his client, Kevin Wiley, and as part of Glenny's representation of the client as an attorney. Glenny asserted the attorney/client privilege to questions about Kevin Wiley's purpose for the Letters. Glenny said he believed everything Dominguez did for the client, Kevin Wiley, would be privileged and he asserted the privilege on behalf of his client. Glenny testified Kevin Wiley instructed Glenny's office to fax the Letters to two different fax numbers. Regarding the information in the Letters, Glenny testified he believed the statements were true based on statements that were made to his office by Ravkind, Kevin Wiley, Lantrip and her business manager. Glenny did not independently verify that information.

Kevin Wiley testified that he, Lantrip's business manager, and someone in Glenny's office—he believed it was Dominguez—participated in two conference calls with Ravkind's office. They were trying to verify that the trust existed and that the amounts were correct. The second call was about Lantrip's access to the funds. One of the two fax numbers on the Letters is Kevin Wiley's fax number. Asked if he knew if the Letters had been provided to Ferrier as part of Ferrier's work as a mortgage broker, Kevin testified, "I don't know. I would assume so but I don't know. I think they were provided to a lot of mortgage companies." Later in the deposition, Kevin testified the Letters were done for his office and not submitted for

underwriting.

Ferrier testified he received the Letters by fax directly from Glenny's office. The Letters were sent to him shortly after the Bank had requested additional information from Lantrip about her employment and her access to the trust funds.

Dominguez's affidavit stated that Kevin Wiley advised the office that he was building a home for Lantrip and her mortgage company had requested him to confirm the deposits and business information on Lantrip. Dominguez testified in her deposition that it was Kim Wiley who had the discussions with Kevin Wiley and it was Kim who prepared the Letters.

Kim Wiley explained that Kevin Wiley called and talked to Dominguez about what he needed. Dominguez prepared an initial draft of the Letters, then Kim Wiley edited them and signed Glenny's name. Kim then faxed the Letters to the fax numbers Kevin had provided.

There is additional evidence the Letters were signed in the scope of employment. Dominguez testified it was not unusual for Kim Wiley to sign letters on Glenny's behalf. Dominguez also testified that Glenny never objected to the paralegals signing his name to letters of protection or demand letters. Kim Wiley testified she signed letters on Glenny's behalf with his direction and approval. She signed pleadings on his behalf only with his direction and approval. Kim Wiley said she signed the Letters, but not with Glenny's permission. When asked if she signed the Letters because she was trying to help her brother, she said, "No, not particularly. I didn't think this was any type of legal advice or anything done. Kevin had requested it specifically for his own internal file. It was not supposed to be anything other than that. End of story."

Viewing the summary judgment evidence in the light most favorable to the Bank, we conclude there is a genuine issue of material fact as to whether the Letters were signed by

Glenny's employees in the scope of their employment and whether the representations in the Letters were made in the course of Glenny's business as an attorney.

## 2. Economic Loss Rule

Glenny argued in his motion that a plaintiff must prove an injury independent of a breach of contract to support a claim for negligent misrepresentation. He asserted the Bank sought only to recover the loss or damage from Lantrip's breach of the promissory note. Glenny cited *D.S.A. v. Hillsboro Independent School District*, 973 S.W.2d 662, 663 (Tex. 1998) to support his argument. In that case, however, the plaintiff and defendant were in contractual privity. *Id.* Therefore, the plaintiff was required to establish an injury independent of the breach of contract in order to recover for negligent or grossly negligent misrepresentation. *Id.* at 664 (negligent misrepresentation damages do not include the benefit of the plaintiff's contract *with the defendant*).

Here, there was no contract between the Bank and Glenny. The supreme court recently clarified that the economic loss rule normally applies between parties to a contract, but does not apply between strangers to the contract. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011) ("[W]e have never held that [the economic loss rule] precludes recovery completely between contractual strangers in a case not involving a defective product— as the court of appeals did here."). Accordingly, the economic loss rule as asserted by Glenny does not bar the Bank's claim. *See id.* at 419 ("The economic loss rule does not swallow all claims between contractual and commercial strangers.").

The Bank presented evidence of the balance due on Lantrip's loan after the Bank foreclosed on the security for the loan. This is some evidence of the measure of damages for

negligent misrepresentation.[5]

We conclude the trial court erred by granting Glenny's no-evidence motion for summary judgment. We sustain the second and third subparts of the Bank's first issue.

## C. Traditional Motion

The Bank's second issue argues the trial court erred by granting Glenny's traditional motion for summary judgment because he failed to meet his burden and genuine issues of material fact remain on the issues of (1) scope of employment and (2) the Bank's justifiable reliance on the misrepresentations.

On his traditional motion for summary judgment, Glenny undertook the burden of disproving as a matter of law the scope of employment element of respondeat superior and the justifiable reliance element of negligent misrepresentation.

### 1. Scope of Employment

On the scope of employment issue, Glenny cited portions of his and Kim Wiley's depositions as summary judgment evidence. Glenny pointed to his own testimony that his signature was not on the Letters, no one in his office had authority to sign his name without permission, and he did not know about the Letters before they were sent out. He relied on Kim Wiley's deposition testimony that she edited the Letters and signed Glenny's name to them

---

[5] *See Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991) (adopting RESTATEMENT (SECOND) OF TORTS § 552B (1977) as the measure of damages for negligent misrepresentation). The comments to the Restatement include a scenario similar to that presented in this case. The pecuniary loss measure of damages applies in two situations:

> The first is when the financial position of a third person is misrepresented for the purpose of inducing the recipient to extend credit to him. In this case the loss for which the plaintiff can recover is that suffered because of the third person's inability to meet the credit extended to him. If the third person pays nothing, the loss recoverable is the entire amount of the credit extended. If the third person pays in part, the loss recoverable is the residue remaining unpaid by him.

RESTATEMENT (SECOND) OF TORTS § 549 cmt. a; RESTATEMENT (SECOND) OF TORTS § 552B cmt. a (incorporating comments *a* to *f* of § 549 as applicable to damages for negligent misrepresentation under § 552B).

without his permission.

However, as discussed above, the Bank presented evidence raising fact issues about the scope of employment, including Glenny's own testimony that the Letters were prepared by his office at the request of his client as part of his representation of the client as an attorney. There is conflicting evidence about the scope of employment of Kim Wiley, including Dominguez's affidavit and her deposition testimony that it was not uncommon for she or Kim Wiley to sign letters on Glenny's behalf. Kim Wiley's testimony indicated she signed the Letters as part of her employment duties in assisting a client of the firm rather than a personal matter to help her brother. And Glenny's testimony is not clear, positive, and direct, otherwise credible and free from contradictions and inconsistences. *See* TEX. R. CIV. P. 166a(c) (summary judgment may be based on uncontroverted testimonial evidence of an interested witness, if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistences, and could be readily controverted).

Both Glenny and Kim Wiley admitted that Kim had signed documents with Glenny's name in the past, albeit with his permission. The evidence that, on this occasion, she may have done so without his permission does not *conclusively* prove she signed the Letters outside her general authority as an employee. An employer may be vicariously liable for an employee's misrepresentations committed within the scope of employment even though the employer had no knowledge of the fraud or misrepresentations and received no benefit from them. *See Campbell v. Hamilton*, 632 S.W.2d 633, 635 (Tex. App.—Dallas 1982, writ ref'd n.r.e.); *see also GTE Sw.*, 998 S.W.2d at 618 ("If the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, the employer may be liable."); *G.T. Mgmt.*, 106 S.W.3d at 884 (employer liable for act of employee, even if act

–11–

contrary to express orders, if done within general authority of employee). If an agent is acting within the scope of his general authority, his wrongful act, though unauthorized, will nevertheless subject his principal to liability. *Hedley Feedlot, Inc. v. Weatherly Trust*, 855 S.W.2d 826, 837 (Tex. App.—Amarillo 1993, writ denied).

A rational jury could conclude that the paralegals' acts were motivated at least in part by the intent to further Glenny's business relationship with his existing client, Kevin Wiley, and that Kim Wiley signed Glenny's name within the scope her general authority. While other inferences are also available from the summary judgment evidence, it is for a factfinder after trial on the merits to resolve those conflicting inferences based on all the evidence.

We conclude Glenny failed to carry his burden to conclusively prove the Letters were signed outside the scope of employment of his employees. There is a genuine issue of material fact as to whether the Letters were prepared and signed within the course and scope of employment by Glenny's employees. Accordingly, the trial court erred by granting summary judgment on this ground.

### 2. Justifiable Reliance

On the justifiable reliance issue, Glenny cited only the Letters and argued the Letters alone did not justify making a $1.9 million construction loan. He cited no evidence to support of this ground for summary judgment.

Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010). In measuring justifiability, we must inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.* (quoting *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1026 (5th Cir.1990),

*abrogated on other grounds by Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)).

The Bank presented evidence in its response that its loan officer, Normile, relied on the Letters in approving the loan to Lantrip and would not have done so if she had known that Glenny did not have personal knowledge of the information stated in the Letters. Normile described typical practices in the industry for processing loan applications. She said Ferrier (the mortgage broker) took the initial application from Lantrip and obtained credit reports from three sources, more than the usual one. Normile explained that that based on verification of assets, the loan application, and financial statements, she would prepare documentation for review and approval of the loan. Two of the critical asset verifications in this case were the Ravkind verification of the two trust accounts and the Letters. Normile told Ferrier she required verification that Lantrip had access to the trust accounts in addition to the information she had from Ravkind. She received the Letters in response. There is evidence the Letters were sent to Ferrier directly from Glenny's office and Ferrier forwarded them to the Bank in response to Normile's request.

Although, Kim Wiley testified that the Letters were only for Kevin Wiley's files, nothing on the face of the Letters indicates this is the case. The Letters were not addressed to Kevin Wiley, but "To Whom it May Concern". *See McCamish*, 991 S.W.2d at 794 (noting lawyer may minimize risk of liability to nonclient by setting forth limitations as to whom the representation is directed and who should rely on it). It is reasonable to infer that the Letters invite reliance from anyone who may be concerned with Lantrip. *See id.* at 795. Glenny presented no evidence that the Bank was not justified as a matter of law in relying on the Letters in addition to the other information in its loan file. Nor did Glenny present any evidence of "red flags" that would negate justifiable reliance. *See Grant Thornton*, 314 S.W.3d at 923.

We conclude that Glenny failed to carry his burden to conclusively prove the Bank did not justifiably rely on the Letters. There are genuine issues of material fact about whether the Bank justifiably relied on the Letters and other information in the loan application. Accordingly, the trial court erred by granting summary judgment on this ground. We sustain the Bank's second issue.

## CONCLUSION

The trial court erred by granting summary judgment on both the no-evidence and traditional grounds stated in Glenny's motion for summary judgment. Accordingly, we reverse the summary judgment that the Bank take nothing on its negligent misrepresentation claim against Glenny and remand that claim for further proceedings. In all other respects, the trial court's judgment is affirmed.

111478F.P05

/Jim Moseley/
JIM MOSELEY
JUSTICE

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BANK OF TEXAS, N.A., Appellant

No. 05-11-01478-CV

CLINT M. GLENNY, II, Appellee

On Appeal from the 193rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. 08-14408.
Opinion delivered by Justice Moseley. Justices Francis and Lang participating.

V.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment stating that Bank of Texas, N.A. take nothing from Glint M. Glenny, II. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings.

     It is **ORDERED** that appellant BANK OF TEXAS, N.A. recover its costs of this appeal from appellee CLINT M. GLENNY, II.

Judgment entered this 18th day of June, 2013.

/Jim Moseley/
JIM MOSELEY
JUSTICE